This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39116**

**ASHLEY IMMING f/k/a ASHLEY CORBUS,**

    Plaintiff-Appellant/Cross-Appellee,

v.

**OSVALDO DE LA VEGA and SOUTHWEST
HEALTH SERVICES, P.A,**

    Defendants-Appellees/Cross-Appellants.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY
James T. Martin, District Court Judge**

The Furth Law Firm, P.A.
Ben Furth
Paul Hibner
Las Cruces, NM

Dixon*Scholl*Carrillo*P.A.
Steven S. Scholl
Albuquerque, NM

for Appellant/Cross-Appellee

Cervantes Law Firm, P.C.
Joseph Cervantes
Las Cruces, NM

Batley Family Law
L. Helen Bennett
Albuquerque, NM

for Appellees/Cross-Appellants

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}**     Plaintiff Ashley Imming sued Defendants Osvaldo De La Vega and Southwest Health Services, P.A., alleging various claims for workplace sexual harassment, gender discrimination, and violations of the New Mexico Human Rights Act (NMHRA), NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2021).[1] Three of Plaintiff's claims—hostile work environment, retaliation, and battery—went to a jury, which returned a verdict for Plaintiff on the hostile work environment claim and a defense verdict on the other two. The district court awarded Plaintiff attorney fees and costs. Plaintiff appealed and Defendants cross-appealed. Finding no reversible error, we affirm.

**DISCUSSION**

**{2}**     The parties present nine issues for our review. Plaintiff argues the district court erred by (1) granting partial summary judgment on her NMHRA retaliation claim, (2) granting Defendants' Rule 1-034(A)(2) NMRA request to inspect Plaintiff's home, and (3) improperly instructing the jury on Plaintiff's retaliation claim.

**{3}**     On cross-appeal, Defendants argue that the district court erred by (1) improperly instructing the jury on the apportionment of liability between Defendants, (2) allowing Plaintiff to introduce evidence of Defendants' relative wealth and assets, (3) admitting the testimony of a third party witness and text messages the witness exchanged with Defendant De La Vega, (4) admitting evidence that Defendant De La Vega used a racial slur, (5) admitting a summary exhibit under Rule 11-1006 NMRA, and (6) calculating attorney fees under the lodestar method.

**{4}**     None of these issues require reversal. We first address Plaintiff's appeal, then turn to Defendants' cross-appeal. Because this is a memorandum opinion, we set forth only those facts necessary to contextualize our decision on each issue.

**I.     Partial Summary Judgment on Plaintiff's Retaliation Claim**

**{5}**     We first take up Plaintiff's claim that the district court erred in granting summary judgment in favor of Defendants on a portion of her NMHRA retaliation claim. Under the NMHRA, a retaliation claim may be brought when an employer "engage[s] in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the [NMHRA]." Section 28-1-7(I)(2). A plaintiff suing for retaliation under the NMHRA must establish that "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events." *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 33, 135 N.M. 539, 91 P.3d 58.

---

1The NMHRA was amended in 2019 and 2021. However, we apply the version of the act in effect at the time that Plaintiff filed suit in 2017 and all references to the NMHRA in this opinion are to the act as amended through 2017.

**{6}** At issue is Plaintiff's claim that Defendant De La Vega retaliated against her after she filed a complaint with the Human Rights Bureau and the instant lawsuit in the district court—actions that amount to protected activity under the NMHRA. *See Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 13, 139 N.M. 12, 127 P.3d 548 (explaining that protected activity includes filing a claim with the EEOC). The alleged retaliation consisted of Defendant De La Vega telling Plaintiff's neighbor and another acquaintance of Plaintiff that Defendant De La Vega had a consensual sexual affair with Plaintiff. It is undisputed that both the filing of the complaints and the alleged retaliatory conduct occurred months after Plaintiff had left Defendants' employment. The district court determined as a matter of law that Defendant De La Vega's conduct did not constitute an "adverse employment action" for purposes of the second element of a retaliation claim because it did not occur while Plaintiff was employed and the comments were not made to an employer or potential employer; therefore, the district court concluded, Plaintiff was without evidence to support her claims for retaliation resulting from either the filing of her complaint with the Human Rights Bureau or her lawsuit in the district court.

**{7}** On appeal, Plaintiff argues the district court erred in concluding that she did not suffer any adverse employment actions. Because there are no material facts in dispute, "we review the district court's grant of summary judgment de novo." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

**{8}** Our Supreme Court has said that "[a]n adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions *of employment*." *Ulibarri v. N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 16, 139 N.M. 193, 131 P.3d 43 (emphasis added). Examples of such a change include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, [and] a decision causing a significant change in benefits." *Id.* (internal quotation marks and citation omitted). Plaintiff does not address the *Ulibarri* standard in her briefing and does not argue how Defendant De La Vega's statements imposed "a tangible, significant, harmful change in the conditions of [her] *employment*." *Id.* (emphasis added).

**{9}** Instead, Plaintiff directs us to a United States Supreme Court retaliation case addressing Title VII of the Civil Rights Act of 1964 and a special concurrence in *Gonzales v. New Mexico Department of Health*, 2000-NMSC-029, 129 N.M. 586, 11 P.3d 550 for the proposition that retaliation outside of a plaintiff's employment can yield liability. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 70 (2006) (holding that "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm"). Plaintiff urges us to apply this standard here. We decline to do so.

**{10}** The New Mexico Supreme Court has not adopted the *White* approach, and, as discussed, the Court applied a different test for "adverse employment action" in *Ulibarri*, 2006-NMSC-009, ¶ 16. This Court is governed by precedents of our Supreme Court, and Plaintiff's argument that we diverge from the meaning of adverse employment action adopted by our Supreme Court is not well taken. *See State ex rel. Martinez v.*

*City of Las Vegas*, 2004-NMSC-009, ¶ 22, 135 N.M. 375, 89 P.3d 47 (providing that "the Court of Appeals is bound by [New Mexico] Supreme Court precedent").

**{11}** Applying *Ulibarri*'s definition of adverse employment action here, Plaintiff has not shown that the district court erred in concluding that Defendant De Le Vega's comments do not qualify as an adverse employment action as a matter of law. 2006-NMSC-009, ¶ 16. As in *Ulibarri*, we hold that "[e]ven if these comments were made with a retaliatory motive, they do not constitute a significant, harmful change in the conditions of employment. Without any showing that these comments were coupled with any more concrete action, they do not rise to the level of an adverse employment action." *Id.* We affirm the district court's grant of summary judgment on this claim.

## II.     Defendants' Rule 1-034(A)(2) Request to Inspect Plaintiff's Home

**{12}** Before trial, Defendants filed a motion to compel entry on lands pursuant to Rule 1-034(A)(2). Defendants sought to take pictures of Plaintiff's home in response to questions her attorneys asked Defendant De La Vega during his deposition. Plaintiff's attorneys had used photographs of her living room and kitchen to impeach Defendant De La Vega about a sexual encounter he claimed occurred between the two of them at Plaintiff's house. Defendants argued that it would be inequitable to allow Plaintiff to use her photographs to question Defendant De La Vega at trial without granting him an opportunity to inspect the photographed area independently. After a hearing on the motion, the district court granted Defendants limited access to Plaintiff's home for the purpose of taking photographs.

**{13}** On appeal, Plaintiff argues that the district court erred by granting the motion to compel. We review district court decisions regarding discovery for an abuse of discretion. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 37, 127 N.M. 282, 980 P.2d 65. "An abuse of discretion occurs when the trial court's ruling is against the facts, logic, and circumstances of the case or is untenable or unjustified by reason." *Reaves v. Bergsrud*, 1999-NMCA-075, ¶ 13, 127 N.M. 446, 982 P.2d 497; *see also Marchiondo v. Brown*, 1982-NMSC-076, ¶ 16, 98 N.M. 394, 649 P.2d 462 ("Courts generally permit discovery where relevant facts are in the exclusive control of the opposing party."). In light of the issues raised in Defendants' motion to compel, the district court's decision to permit limited access to Plaintiff's home was not clearly against the facts, logic, and circumstances of this case.[2]

---

2We note that Plaintiff has not indicated what actual relief we could grant at this juncture in the event of error. *See* Rule 12-318(A)(5) NMRA (requiring "a conclusion containing a precise statement of the relief sought"). The inspection has already taken place, and Plaintiff has not argued that the inspection or its fruit resulted an error requiring retrial. Rather, she states the district court's order "opened up a Pandora's Box. The . . . Court [should] slam the Box closed, make clear discovery against sexual harassment victims has limits, and [Defendant]s' home inspection was far from permissible discovery." While we understand the inspection troubled Plaintiff, we cannot put the evil back in the box at this point, to borrow from Plaintiff's metaphor. In other instances where a party has sought to resist an order compelling discovery, this Court has noted the pretrial mechanisms available for challenging a discovery ruling: a party can apply for an interlocutory appeal or "disobey the order, suffer sanctions, and appeal both the

## III. Jury Instructions on Plaintiff's Retaliation Claim

**{14}** Finally, Plaintiff argues that the district court erred in instructing the jury on her surviving retaliation claim in three ways: (1) by refusing to give Plaintiff's proposed instruction defining "protected activity"; (2) in failing to clearly define "protected activity" in the given instructions; and (3) in responding to the jury's written question during deliberations.[3] "We review jury instructions de novo to determine whether they correctly state the law and are supported by the evidence introduced at trial." *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853 (internal quotation marks and citation omitted). "If instructions, considered as a whole, fairly present the issues and the law applicable thereto, they are sufficient. Denial of a requested instruction is not error where the instructions given adequately cover the issue." *Collins v. St. Vincent Hosp., Inc.*, 2018-NMCA-027, ¶ 21, 415 P.3d 1012 (internal quotation marks and citation omitted).

**{15}** Here, the jury instructions accurately stated the law. Jury Instruction No. 8 tracked the uniform jury instruction for NMHRA violations, UJI 13-2307 NMRA, and stated that "[a] person or employer violates the [NMHRA] if the employer or person engages in any form of threat, retaliation, or discrimination against any person who has opposed any unlawful discriminatory practice, filed a complaint, or testified or participated in any proceeding under the [NMHRA]." This instruction essentially mirrors the statutory language of the NMHRA, which itself defines what constitutes "protected activity." *See* § 28-1-7(I)(2).[4] In addition to the uniform jury instruction, the jury was separately instructed on the elements of retaliation stated in *Ocana* in Instruction No. 11: "To prove retaliation, Plaintiff must show that: (1) She engaged in protected activity; (2) She suffered an adverse employment action; and (3) There is a causal connection between these two events." *See* 2004-NMSC-018, ¶ 33. And finally, Jury Instruction No. 22 required the jury to "consider these instructions as a whole, not picking out one instruction, or parts thereof, and disregarding others." We acknowledge that Jury

---

underlying order and the order granting sanctions once a final, appealable order [is] entered." *Pina v. Espinoza*, 2001-NMCA-055, ¶ 30, 130 N.M. 661, 29 P.3d 1062; *see also King v. Allstate Ins. Co.*, 2004-NMCA-031, ¶ 19, 135 N.M. 206, 86 P.3d 631 ("A party who seeks to challenge an order granting a motion to compel discovery . . . can either apply for an interlocutory appeal or refuse to comply, be held in contempt and file an appeal as of right from both the contempt judgment and the underlying discovery order on which the contempt was based."). These mechanisms allow for review before the protections sought for the contested information are lost through disclosure.

3Plaintiff also raises an unpreserved claim of error that Jury Instruction No. 8 confused the jury because it referred to participation-clause protected activity. *See* § 28-1-7(I)(2) (identifying protected activity to mean "*participating*" in a proceeding or "*opposing*" unlawful discriminatory practices). Plaintiff has not directed us to any portion of the record where she raised the arguments she now complains of on appeal, and we decline to consider this argument on grounds that it was not preserved below. *See Ferebee v. Hume*, 2021-NMCA-012, ¶¶ 25-26, 485 P.3d 778.

4Plaintiff's counsel implicitly acknowledged as much at the final jury instruction conference during trial. Plaintiff's counsel initially asserted that the instructions do not define what protected activity is. The district court responded that (what eventually became) Jury Instruction No. 8 "defines the protected activity. Opposed unlawful discriminatory practice, filed a complaint, testified or participated in any proceeding." Plaintiff's attorney replied, "I appreciate that. And then I would say that [Jury Instruction No. 11] is redundant. You don't need it. You're citing the statute. If she opposed it, she's engaged in protected activity." The district court overruled Plaintiff's request to strike Jury Instruction No. 11.

Instruction No. 8 did not contain the words "protected activity" and thus, there is no overt link between the statutory definition of protected activity in Jury Instruction No. 8 to the *Ocana* requirements in Jury Instruction No. 11. Nevertheless, taken together, the instructions accurately stated the law regarding retaliation claims in New Mexico.

**{16}** Because the jury instructions, considered as a whole, fairly presented the law applicable to Plaintiff's retaliation claim, we perceive no error in the given instructions or in the district court's refusal to give Plaintiff's proposed instruction on the definition of "protected activity." *See Sandoval v. Gurley Properties Ltd.*, 2022-NMCA-004, ¶¶ 10-13, 503 P.3d 410 (holding there was no error in refusing to give an additional jury instruction where the given instructions adequately instructed the jury). Accordingly, Plaintiff's first two arguments present no basis for reversal.

**{17}** Plaintiff's third argument concerns the district court's response to a question submitted by the jury during its deliberations. The jury asked, "What does protected activity mean?" The district court, after conferring with counsel, responded by instructing the jury, "You must rely upon the Court's Instructions." Plaintiff argues that the district court should have given her proposed jury instruction defining the term in response to the jury's question.

**{18}** When the jury instructions accurately state the law, we review the district court's response to the jury's question for abuse of discretion. *See State v. Wall*, 1980-NMSC-034, ¶ 10, 94 N.M. 169, 608 P.2d 145 (reviewing the district court's decision to provide an additional jury instruction after deliberation had commenced for an abuse of discretion), *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071; *State v. Juan*, 2010-NMSC-041, ¶ 16, 148 N.M. 747, 242 P.3d 314 ("The decision to issue additional jury instructions generally lies within the sound discretion of the trial court."); *see also Sonntag v. Shaw*, 2001-NMSC-015, ¶ 15, 130 N.M. 238, 22 P.3d 1188 ("Denial of a requested instruction is not error where the instructions given adequately cover the issue.").

**{19}** We have already determined that the jury instructions accurately stated the law. Accordingly, Plaintiff has not persuaded us that the district court abused its discretion in responding to the jury's question by instructing the jury to consider the given instructions. Nor did the court err in refusing Plaintiff's specific request to give her proposed instruction on the definition of "protected activity." Plaintiff's proposed instruction included two claims for which the district court had already granted summary judgment (as discussed in the first section of this opinion), and also included a "good faith" standard drawn from federal law that has not been clearly or universally incorporated into New Mexico law. *See Ocana*, 2004-NMSC-018, ¶ 35 (listing forms of opposition under the NMHRA to include "formal complaints, as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges" but making no reference to a requirement that a plaintiff have a reasonable, good faith belief that the NMHRA has been violated (alteration, internal quotation marks, and

citation omitted)); *Goodman v. OS Rest. Servs., Inc.*, 2020-NMCA-019, ¶¶ 20-24, 461 P.3d 906 (applying a "good-faith" standard drawn from the federal Americans with Disabilities Act case law to evaluate a NMHRA retaliation claim involving a plaintiff's physical disability).[5]

**{20}** For all of these reasons, Plaintiff has not persuaded us that the district court erred in instructing the jury or abused its discretion in its response to the jury's question.

## IV. Jury Instructions on Apportionment of Liability Between Defendants

**{21}** Turning now to Defendants' cross-appeal, Defendants first argue that the district court improperly instructed the jury regarding apportionment of liability. According to Defendants, "liability . . . should have been considered and assigned as distinct and separate" between Defendants, and ultimately, liability should only have been assigned to the employer, Defendant Southwest Health Services. Defendants complain that the special verdict form improperly allowed the jury to enter a verdict for joint and several liability as to both Defendants, contrary to New Mexico law. *See Gulf Ins. Co. v. Cottone*, 2006-NMCA-150, ¶ 20, 140 N.M. 728, 148 P.3d 814 ("New Mexico is a pure comparative fault state.").

**{22}** Although Defendants' argument suffers from problems of preservation and invited error, it is readily disposed of on the merits. The jury was instructed—apparently without objection—that Defendant Southwest Health Services is vicariously liable for any discriminatory or retaliatory acts of Defendant De La Vega. The New Mexico Legislature expressly reserved joint and several liability for vicarious liability claims. *See* NMSA 1978, § 41-3A-1(C)(2) (1987) (stating that joint and several liability applies "to any persons whose relationship to each other would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons"); *Valdez v. R-Way, LLC*, 2010-NMCA-068, ¶ 7, 148 N.M. 477, 237 P.3d 1289 ("We interpret Section 41-3A-1(C)(2) as preserving the vicarious liability of an employer for the conduct of an employee, such that they may be jointly liable."). Accordingly, the district court did not err in failing to instruct the jury on apportionment of liability or in entering judgment against both Defendants.

## V. Evidentiary Issues

**{23}** Defendants present four evidentiary issues for our review. They claim the district court improperly allowed Plaintiff to introduce the following: (1) evidence of Defendants' relative wealth and assets; (2) testimony from a third-party witness and text messages between Defendant De La Vega and the third party; (3) evidence that Defendant De La Vega used a racial slur; and (4) a summary exhibit under Rule 11-1006. We review the admission of evidence for abuse of discretion. *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-

---

[5]While Plaintiff makes a brief argument that the district court erred in failing to inform the jury that Plaintiff needed only a good faith basis that a NMHRA violation had occurred, Plaintiff has not indicated where this argument was preserved below, nor does she provide any analysis of why New Mexico should adopt or apply the federal standard in this case. Neither party addressed *Goodman* in their briefing.

NMCA-078, ¶ 39, 146 N.M 698, 213 P.3d 1127. "If evidence is erroneously admitted or excluded, the complaining party must show prejudice to obtain a reversal." *Id.*

## A.    Evidence of Defendants' Wealth and Assets

**{24}**    Defendants claim that the district court erroneously allowed Plaintiff to present evidence of Defendant De La Vega's assets and the fact that he sold the assets of Defendant Southwest Health Services during the pendency of the litigation. Defendants argue that evidence of a party's wealth is *only* relevant for determining the amount of punitive damages, and that such evidence is irrelevant and prejudicial for claims involving only compensatory damages. Citing only to federal authority, Defendants claim "[i]t is the general rule that, except where position or wealth is necessarily involved in determining damages sustained, the admission of evidence concerning the wealth of a party litigant constitutes error." *Blankenship v. Rowntree*, 219 F.2d 597, 598 (10th Cir. 1955).

**{25}**    Here, Defendant De La Vega faced both compensatory *and* punitive damages on Plaintiff's battery claim. It is well-established that "[e]vidence of a defendant's wealth is relevant for determining the proper amount of punitive damages." *DeMatteo v. Simon*, 1991-NMCA-027, ¶ 9, 112 N.M. 112, 812 P.2d 361. As such, we conclude the district court did not abuse its discretion in allowing the jury to hear evidence of Defendants' assets as it pertained to Plaintiff's claim for battery. While Defendants note that the jury ultimately returned a defense verdict on the battery claim, thus eliminating any basis for a punitive damages award, they have not established that the jury's decision somehow renders the financial evidence inadmissible after the fact. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel."). And while Defendants also briefly note that the district court deferred issuing a punitive damages instruction until after the jury reached a verdict on the battery claim, Defendants have not provided a citation to the record for the district court's substantive ruling or otherwise indicated that the district court imposed any limitation on the introduction of financial evidence in advance of the verdict. *See* Rule 12-318(A)(4). Regardless, the district court was not required to limit evidence of Defendants' wealth throughout the trial. *See Ruiz v. S. Pac. Transp. Co.*, 1981-NMCA-094, ¶ 32, 97 N.M. 194, 638 P.2d 406 ("It is within the trial court's discretion to prohibit introduction of such evidence at trial unless and until such time as the jury has been furnished with proof of sufficiently aggravated conduct, if any, as would justify the jury's imposition of punitive damages.").

**{26}**    To the extent Defendants argue that it was error to allow the jury to hear that Defendant Southwest Health Services had few assets, Defendants have not developed an argument as to how they suffered prejudice as a result. The jury did not assign any liability to Defendant De La Vega on the battery claim, and Defendants have not shown that evidence regarding Defendant Southwest Health Services' impecunity impacted the jury's decision-making on the other claims. Defendants simply claim that "the imposition of liability [for Plaintiff's hostile work environment claim] due to perceived financial

condition or net worth . . . *was very likely* the result." (Emphasis added.) "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). Absent a showing of either abuse of discretion or prejudice, we will not reverse the district court on this issue.

## B.   Admission of Testimony From a Third Party Witness and Text Messages Between Defendant De La Vega and the Third Party

**{27}**   According to Defendants, the district court erroneously allowed a third party witness, Danika Jackson, to testify about text messages she exchanged with Defendant De La Vega. Defendants claim that the text messages constituted hearsay[6] that when coupled with Jackson's testimony, amounted to irrelevant, inadmissible character evidence contrary to Rule 11-404 NMRA.

**{28}**   Defendants have not indicated which text messages they found objectionable, nor have they cited to where in the record they objected to admission of the text messages. In fact, Defendants moved the text messages in during cross-examination and stipulated to the admission of additional text messages that Plaintiff sought to include later that day. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273.

**{29}**   Defendants also assert that Jackson's "testimony amounted to evidence of [Defendant] De La Vega's bad character or reputation, or of his disposition to sexually importune and harass women, as Plaintiff alleged. . . . The evidence was clearly hearsay and clearly prejudicial. Its sole effect, insofar as [Defendant] De La Vega was concerned, was to have him branded as a repeat offender and a harasser of women." Like the text messages, Defendants have not directed us to any specific portion of Jackson's testimony they claim constituted inadmissible character evidence or was prejudicial. We decline to search the record for evidence that would support Defendants' argument. *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

**{30}**   Because the generalized arguments are insufficient to demonstrate error or prejudice, we decline to hold that the district court abused its discretion in admitting Jackson's text messages and testimony. *See Kilgore*, 2009-NMCA-078, ¶ 29.

## C.   Evidence that Defendant De La Vega Used a Racial Slur

---

[6]Defendants make no argument about how Jackson's testimony or text messages constituted hearsay. "We will not review unclear arguments, or guess at what [a party's] arguments might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

**{31}** During trial, multiple witnesses, including Plaintiff, testified that Defendant De La Vega used the "N-word" or a variant thereof in the workplace. Defendants objected on grounds that the only purpose of that testimony was "to unfairly prejudice the jury, to mislead the jury, to confuse the issues, and to invoke sympathy and prejudice against [Defendant] De La Vega." The district court overruled Defendants' objection because offensive language could support Plaintiff's hostile work environment claim, even if it was not sexual in nature. The district court did, however, caution Plaintiff's counsel against focusing on the use of the "N-word" because "this is a sexual harassment case, not a racial harassment case."

**{32}** On appeal, Defendants argue that Defendant De La Vega's use of a racial slur was irrelevant and therefore inadmissible under Rule 11-402 NMRA, and that mention of the "N-word" was unduly prejudicial under Rule 11-403 NMRA. Defendants concede, however, that "one or two of these alleged racial statements may have been relevant to establish the general workplace hostility." Accordingly, we limit our review to Defendants' claim of unfair prejudice.

**{33}** Rule 11-403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." The rule "does not guard against any prejudice whatsoever, but only against unfair prejudice." *State v. Bailey*, 2017-NMSC-001, ¶ 16, 386 P.3d 1007. Unfair prejudice in the context of Rule 11-403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted). "Evidence is unfairly prejudicial if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *Bailey*, 2017-NMSC-001, ¶ 16 (internal quotation marks and citation omitted). "The determination of unfair prejudice is fact sensitive, and, accordingly, much leeway is given trial judges who must fairly weigh probative value against probable dangers." *Id.* (internal quotation marks and citation omitted).

**{34}** "As stated above, we review a district court's balancing of probative value against unfair prejudice for abuse of discretion." *State v. Carson*, 2020-NMCA-015, ¶ 28, 460 P.3d 54; *see also State v. Rojo*, 1999-NMSC-001, ¶ 48, 126 N.M. 438, 971 P.2d 829 ("In determining whether the trial court has abused its discretion in applying Rule 11-403, the appellate court considers the probative value of the evidence."). Here, the district court concluded that evidence of Defendant De La Vega's use of racist language was probative to show that the workplace was a hostile and abusive environment for the employee. *See Herald v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-104, ¶ 53, 357 P.3d 438 (providing that to make out a hostile work environment claim, the harassing conduct must be "so severe and pervasive that the workplace is transformed into a hostile and abusive environment for the employee" (omission, internal quotation marks, and citation omitted)). Defendants concede that the admission of "one or two" of these statements was permissible for that purpose, but argue that the word is inherently inflammatory and offensive such that "Plaintiff's reference to alleged racist statements

undoubtedly prejudiced Defendants' right to a fair trial." However, "the fact that some jurors might find this evidence offensive or inflammatory does not necessarily require its exclusion." *Rojo*, 1999-NMSC-001, ¶ 48; *State v. Ruiz*, 1995-NMCA-007, ¶ 12, 119 N.M. 515, 892 P.2d 962 ("[T]he fact that evidence is prejudicial is not grounds for excluding it; exclusion is required only when the danger of 'unfair' prejudice outweighs the legitimate prejudice that is otherwise known as probative value." (citation omitted)). Indeed, Defendants' concession acknowledges that the evidence of Defendant De La Vega's use of racist language was not so prejudicial that it should have been excluded altogether, and Defendants have not demonstrated that the limited references to such evidence throughout the five-day trial were so prejudicial as to have an "unusual propensity to prejudice, confuse, inflame or mislead the fact finder." *Stanley*, 2001-NMSC-037, ¶ 17. Because the testimony was probative of the hostile work environment, it was reasonable for the district court to conclude that the probative value of this evidence was not substantially outweighed by other considerations, and we conclude that the district court did not abuse its discretion in admitting evidence that Defendant De La Vega used the "N-word" at work.

## D.     Summary Exhibit Under Rule 11-1006

**{35}**    Defendant De La Vega claimed he and Plaintiff engaged in a sexual relationship from approximately April 28, 2016 to June 20, 2016. Defendant De La Vega stated that he and Plaintiff regularly had sex during their lunch breaks at his home over that time period. To rebut this claim, Plaintiff introduced a summary exhibit under Rule 11-1006 that combined Defendant De La Vega's scheduled patient appointments with the times Plaintiff had clocked in and out for lunch. Plaintiff proffered the summary calendar as trial Exhibit No. 32, stating that it was an accurate summary of Exhibit Nos. 23 and 24, which were Defendant De La Vega's patient schedule and Plaintiff's time entries, respectively. Exhibit Nos. 23 and 24 had been admitted as business records under Rule 11-803(6) NMRA.

**{36}**    According to Plaintiff, the summary calendar demonstrated that she and Defendant De La Vega never had time to go to his home to engage in the alleged affair. Defendants made multiple objections to the admission of the summary calendar both before and during trial. The district court overruled the objections because the summary calendar stemmed from business records that the court admitted under Rule 11-803(6), and because Plaintiff had properly laid the foundation for the summary itself.

**{37}**    Rule 11-1006 states:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. The court may order the proponent to produce them in court.

**{38}** Defendants first argue that Rule 11-1006 only "contemplates the use of [a] summary, chart, or calculation as a demonstrative exhibit, not necessarily as admissible evidence." However, Defendants repeatedly cite two cases in which our appellate courts upheld the admission of summary exhibits as evidence. *See Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶¶ 7-10, 145 N.M. 280, 196 P.3d 1286; *Cafeteria Operators, L.P. v. Coronado-Santa Fe Assocs., L.P.*, 1998-NMCA-005, ¶ 28, 124 N.M. 440, 952 P.2d 435.

**{39}** Recognizing that summary exhibits may be admissible, Defendants next argue that a summary exhibit may only be admitted as evidence if it refers to independently admissible evidence, and if the party who prepared the summary testifies from personal knowledge about the methodology used to create the exhibit and the reliability of the product. *See Ruiz*, 2008-NMSC-063, ¶ 8 ("The summary, of course, must be of admissible evidence."); *Cafeteria Operators*, 1998-NMCA-005, ¶ 28 ("[C]ourts have read into the Rule a requirement that an individual with knowledge of how the summary was prepared should be available for foundation/cross-examination purposes."). Defendants claim that Plaintiff failed to lay a proper foundation because she did not personally create the calendar or have the people who prepared and created the summary exhibit testify. Again, Defendants cite a case that contradicts their argument. In *Cafeteria Operators*, the testifying witness had not prepared the summary exhibit, but this Court upheld its admission, concluding the proponent had established an adequate foundation through the testimony of a supervisor with knowledge of how the summary was compiled. 1998-NMCA-005, ¶ 28 (noting that "an individual with knowledge of how the summary was prepared should be available for foundation/cross-examination purposes").

**{40}** As Plaintiff notes, the standard for laying a foundation is low. *See State v. Imperial*, 2017-NMCA-040, ¶ 29, 392 P.3d 658. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 11-901(A) NMRA. Plaintiff satisfied that standard.

**{41}** Plaintiff was a "witness with knowledge" that the summary exhibit was what she claimed it to be. *See* Rule 11-901(B)(1). She had held the position of office manager at Southwest Health Services and knew how the business kept its time records and patient schedules. Plaintiff testified that she recognized the summary calendar proffered as Exhibit No. 32, and that it was an accurate summary of the evidence from Exhibit Nos. 23 and 24. She also testified that she personally reviewed all of the records contained in Exhibit Nos. 23 and 24 to ensure the summary calendar contained accurate information. As in *Cafeteria Operators*, we hold that Plaintiff established an adequate foundation in light of her personal knowledge of the records and of how the summary was complied.

**{42}** We conclude that the district court did not abuse its discretion by admitting the summary calendar under Rule 11-1006.

## VI.    Attorney Fees

**{43}** The jury returned a verdict for Plaintiff on her hostile work environment claim and awarded her $250,000 in damages. Plaintiff filed a motion for attorney fees and costs, requesting $563,471.50 in attorney fees calculated using the lodestar method and a 100 percent multiplier. The district court held a hearing on Plaintiff's motion and requested that Plaintiff's attorneys revise their billing statements to exclude excessive or duplicative billing as well as hours spent on unsuccessful claims.

**{44}** Plaintiff submitted a revised request, omitting "(a) time associated with two attorneys' attending depositions . . .; (b) time associated with the nonprevailing retaliation claim under the NMHRA and the intentional torts; (c) time associated with discovery; (d) time associated with unsuccessful motion practice; and (e) all legal assistant time." Plaintiff's revised request sought $457,126.87 in attorney fees and a 25 percent multiplier in the amount of $114,281.72. The district court considered the parties' supplemental briefing and awarded Plaintiff the precise values requested in her revised motion.

**{45}** On appeal, Defendants claim that Plaintiff's revised motion "continued to request attorney fees for work performed in connection with causes of action for which fees were not recoverable, and the work could not be reliably disaggregated." Defendants also argue that the district court improperly applied the lodestar calculation. "[We] review an award of attorney fees for an abuse of discretion." *Am. Civil Liberties Union of N.M. v. Duran*, 2016-NMCA-063, ¶ 24, 392 P.3d 181. "While an award of attorney fees is discretionary, the exercise of that discretion must be reasonable when measured against objective standards and criteria." *Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 13, 287 P.3d 318 (internal quotation marks and citation omitted).

**{46}** We first address Defendants' argument that the district court improperly awarded fees for hours spent on Plaintiff's unsuccessful claims. Plaintiff requested attorney fees under the NMHRA because she prevailed on her hostile work environment claim. *See* § 28-1-13(D). Defendants point out that Plaintiff did not succeed on nine other causes of action she brought at various times during litigation, While we agree as a general matter that Plaintiff was required to segregate recoverable from nonrecoverable fees, and the district court "was required to review [Plaintiff's attorney fee] request and determine what portion of the work done was attributable to the . . . claims" for which fees were authorized, *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 39, 132 N.M. 459, 50 P.3d 554, Defendants have not directed us to any evidence demonstrating that Plaintiff requested or the district court awarded nonrecoverable fees or fees for unsuccessful claims. *See Salehpoor v. N.M. Inst. of Mining & Tech.*, 2019-NMCA-046, ¶ 16, 447 P.3d 1169 ("We are under no obligation to review underdeveloped arguments, and will not scour the record for facts that might support [the d]efendant's position." (citation omitted)).

**{47}** On the contrary, the record shows that Plaintiff's attorneys limited their fee request to the prevailing claim. The district court specifically rejected Plaintiff's initial request and told counsel to provide "a much clearer tie between the hours billed to the one claim that was prevailed on." In response, Plaintiff's attorneys excluded "time

associated with the non-prevailing retaliation claim under the NMHRA and the intentional torts." After reviewing more than two-hundred pages of Plaintiff's revised billing records and attorney declarations, the district court concluded that she had sufficiently reduced her request. The district court did not abuse its discretion by granting Plaintiff's revised fee request, and there is no evidence that the award included an amount for time spent on unsuccessful claims or causes of action for which fees were not authorized.

**{48}** Defendants also challenge the district court's lodestar calculation, arguing that Plaintiff's request was unreasonable. Our courts typically apply the lodestar method in statutory fee-shifting cases such as this "because it provides adequate fees to attorneys who undertake litigation that is socially beneficial." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 34, 140 N.M. 879, 149 P.3d 976. "A lodestar is determined by multiplying counsel's total hours reasonably spent on the case by a reasonable hourly rate." *Id.* "[T]he district court has discretion to apply a multiplier to the lodestar value." *Atherton v. Gopin*, 2012-NMCA-023, ¶ 9, 272 P.3d 700.

**{49}** Courts apply the following factors when determining the reasonableness of a lodestar value:

> (1) the time and effort required, considering the complexity of the issues and the skill required; (2) the customary fee in the area for similar services; (3) the results obtained and the amount of the controversy; (4) time limitations; and (5) the ability, experience, and reputation of the attorney performing the services.

*Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 24, 136 N.M. 647, 103 P.3d 571 (internal quotation marks and citation omitted).

**{50}** In attacking the district court's consideration of the reasonableness factors, Defendants essentially rehash their first argument regarding Plaintiff's unsuccessful claims, saying, "The reasonableness of any hours billed has to take into account the efforts of counsel for causes of action for which Plaintiff did not prevail, but Plaintiff's submission makes no effort to separate out the hours so that the claims to fees can be meaningfully assessed." Again, Defendants have not cited to any portion of the record below in support of their argument that Plaintiff's fee request was either unreasonable or unrelated to the claim on which she prevailed. *See Salehpoor*, 2019-NMCA-046, ¶ 16.

**{51}** Regardless, the record shows that the district court appropriately considered the lodestar factors. The district court acknowledged Plaintiff's claim that "[t]his case involved several novel issues, including Defendants' defense that no sexual harassment occurred because Defendant De La Vega allegedly had a consensual sexual affair with Plaintiff . . . (which was proven false at trial)." The court concluded that this

> case was heavily litigated, counsel financed the prosecution of the case, counsel will be responsible to finance any possible appeal and there exists

the probability that payment of the judgment will be delayed while the matter is appealed. The [district c]ourt has also consider[ed] the issues unique to this case in its determination. The [district c]ourt, therefore, finds that the award of an attorney fee multiplier of 25% is reasonable under all the factors presented by this case.

**{52}** "This court is not inclined to second-guess the district court in its determination as to the reasonableness of an award of attorney fees unless there is a lack of evidentiary basis for the court's determination or unless the court has been shown to have clearly abused its discretion." *Puma v. Wal-Mart Stores E., LP*, 2023-NMCA-005, ¶ 43, 523 P.3d 589 (alterations, internal quotation marks, and citation omitted). Based on the district court's critical evaluation of Plaintiff's fee request and the court's explanation of its award, we conclude that the lodestar award for Plaintiff's attorney fees was not an abuse of discretion, and further, that a 25 percent multiplier was not against the "logic and effect of the facts and circumstances before the court." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 6 (internal quotation marks and citation omitted).

**CONCLUSION**

**{53}** For the foregoing reasons, we affirm.

**{54}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**