2006-NMSC-009

131 P.3d 43

**Leslie ULIBARRI, M.A.,
Plaintiff–Appellant,**

v.

**STATE of New Mexico Corrections
Academy, Defendant–Appellee.**

**No. 29,045.**

Supreme Court of New Mexico.

Feb. 10, 2006.

Daniel M. Faber, Albuquerque, NM, for Appellant.

**196**

Gilkey & Stephenson, P.A., George Christian Kraehe, Barbara Stephenson, Albuquerque, NM, for Appellee.

## OPINION

MINZNER, Justice.

{1} This is an appeal of the district court's grant of summary judgment and dismissal of Plaintiff Leslie Ulibarri's complaint alleging violations of the New Mexico Human Rights Act, NMSA 1978, § 28–1–1 (1969) ("NMHRA"), by Defendant, the State of New Mexico Corrections Academy. We conclude that Defendant was entitled to judgment as a matter of law, that the procedural arguments raised by Plaintiff are without merit, and we affirm.

## FACTS

{2} Because Plaintiff challenges the district court's grant of summary judgment in favor of Defendant, we recite the facts in the light most favorable to Plaintiff "and draw all reasonable inferences in support of a trial on the merits." *Ocana v. Am. Furniture Co.*, 2004–NMSC–018, ¶ 12, 135 N.M. 539, 91 P.3d 58 (*quoting Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 18, 123 N.M. 752, 945 P.2d 970). Plaintiff worked for Defendant as a psychologist from October 1, 2001 to June 7, 2002. Shortly after she was hired, the Academy Director, Alan Shuman, promised her a raise. Plaintiff believed that Shuman had the power or authority to give her this raise. Through November and December of 2001, Shuman made it increasingly clear that he was sexually attracted to Plaintiff. While dining with Plaintiff, following a work related trip to Los Lunas, Shuman giggled and smiled oddly. He later told her that he was thinking about them "being together." On another occasion, he told Plaintiff "[y]our eyes are really beautiful." At the office, Shuman told Plaintiff that he was sexually attracted to Hispanic women, and on another occasion told Plaintiff "[y]ou smell delicious." Shuman also sent Plaintiff emails of virtual flowers and chocolates with personal messages attached.

{3} Finally, on December 10, 2001, Plaintiff and Shuman drove to Hobbs for a work related audit. Shuman asked Plaintiff if she wanted to stop at a "romantic" bed and breakfast. He also asked Plaintiff "[d]o you want to mess around?" and "[d]o you want to have a relationship?" Plaintiff declined. The next day, when returning to Albuquerque, Shuman was concerned that his car was having trouble but hesitated to call for assistance, explaining "[m]y wife doesn't know you are with me."

{4} As a result of these comments, Plaintiff felt increasingly uncomfortable at work. Plaintiff reported to her supervisor, Stan Wilson, that Shuman had propositioned her, but requested that he not tell anyone else, or take any further action. She started wearing scarves, and she told Wilson that she was afraid Shuman would retaliate against her. Although Shuman did not engage in any other behavior that Plaintiff considered sexually harassing or offensive after December 10, 2001, he did increase his criticism of Plaintiff, asking that she keep her in/out marker properly placed, and instructing her that she needed to try to be at work by eight in the morning. Shuman had not previously expressed any concern about the in/out board or Plaintiff's timeliness. Shuman also asked Wilson "What does [Plaintiff] actually do here?" All of these comments were made prior to January 25, 2002. On June 7, 2002, after finding another position, Plaintiff resigned. On learning the news, Shuman commented, "I'm glad I didn't give her that raise that she wanted."

{5} While Plaintiff worked for the Defendant, Shuman and the then-Deputy Secretary of Corrections, had an agreement to "watch each other's back," which Plaintiff contends helped to create a permissive atmosphere and encouraged inappropriate behavior. Shuman was known to have "had improper working relationships with some of the people he supervised." Plaintiff contends that Defendant took no steps to correct Shuman's behavior.

{6} On November 21, 2002, Plaintiff filed a complaint with the New Mexico Human Rights Division and the Equal Employment Opportunity Commission, alleging quid pro quo sexual harassment, hostile work environment sexual harassment, constructive discharge, and retaliation. The district court

granted Defendant's motion for summary judgment with respect to the quid pro quo sexual harassment and constructive discharge claims, and following Defendant's motion for reconsideration, the court granted the motion for summary judgment in its entirety. On appeal, Plaintiff argues that she presented genuine issues of material fact regarding her quid pro quo sexual harassment, hostile work environment sexual harassment, constructive discharge, and retaliation claims. Plaintiff also raises two procedural claims, arguing that the trial court erred in granting Defendant's motion for reconsideration and in denying Plaintiff's reply and motion for reconsideration without a hearing.

## DISCUSSION

{7} We review the district court's grant of summary judgment de novo. *Ocana*, 2004–NMSC–018, ¶ 12, 135 N.M. 539, 91 P.3d 58. Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 1–056(C) NMRA 2006. When reviewing a motion for summary judgment, we view the facts in the light most favorable to the non-moving party. *Ocana*, 2004–NMSC–018, ¶ 12, 135 N.M. 539, 91 P.3d 58.

{8} The parties agree that the relevant statute of limitations is set out in Title VII of the Civil Rights Act of 1964 and states that a charge of discrimination must be filed within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1) (2000); *see also* NMSA 1978, § 28–1–10(A) (2005) (requiring filing of a complaint within 300 days of the alleged act) and NMSA 1978, § 28–1–10(A) (1995) (requiring filing within 180 days).[1] Plaintiff filed her complaint on November 21, 2002, so events prior to January 25, 2002 fall outside the 300 day limitation period.

{9} While Plaintiff concedes that her sexual harassment and retaliation claims are based on events prior to January 25, 2002, she argues that these events should nonetheless be considered under the continuing violation doctrine, an equitable doctrine permitting a plaintiff to bring an otherwise untimely claim. Plaintiff contends that the harassing acts continued until her resignation. In 2002, the United States Supreme Court noted the various approaches taken by the Circuit Courts regarding whether acts falling outside the statutory time period for filing charges are actionable under Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107–08, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The Court observed that many unlawful employment practices are defined by statute and take place at an identifiable time. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114, 122 S.Ct. 2061. These defined acts each constitute separate, actionable unlawful employment practices and a charge covering these discrete acts must be filed within the appropriate time period. *Id.* Therefore, the Court concluded that the clear language of Title VII requires that charges related to discrete acts be filed within the statutory time period and rejected the use of equitable doctrines to extend the statutory time period. *Id.* at 115, 122 S.Ct. 2061.

{10} Unlike discrete acts, hostile environment cases involve repeated conduct over days or years and individual acts of harassment may not be separately actionable. Hostile environment claims are based on the cumulative effects of these acts, and these separate acts constitute a single unlawful employment practice: the practice of requiring an employee to work in a discriminatory, hostile or abusive environment. *Id.* The Court concluded that the practice of permitting a hostile work environment can be said to have "occurred" at the time of any act contributing to the hostile environment. Therefore, if one act contributing to a hostile environment claim occurred within the filing period, all acts creating the hostile environment may be considered. *Id.* at 117, 122 S.Ct. 2061.

---

1. Because the parties have not raised the issue, we do not consider whether the shorter New Mexico limitation period applies to this case.

{11} Although we recognize that we are not bound by the Court's decision in *Morgan* when interpreting the New Mexico Human Rights Act, we find the opinion persuasive and adopt a similar approach to time limitations under the NMHRA.[2] We therefore consider whether Plaintiff's claims can be construed as discrete unlawful employment practices, which must fall entirely within the statutory period, or as a cumulative series of acts constituting a single unlawful employment practice, which may all be considered if any one act contributing to Plaintiff's claim falls within the statutory period. Plaintiff argues that Shuman's comment, "I'm glad I didn't give her that raise that she wanted," was the last in a series of acts contributing to a hostile environment. This comment, made after Plaintiff's resignation, to a third party, could not in itself contribute to the hostile environment. It may, however, support an inference that Shuman created a hostile environment by withholding Plaintiff's raise. Even if we infer from this comment that Shuman's harassment in the form of withholding a promised raise continued as long as she was employed by the Academy, it is not clear that this should be considered an act contributing to a hostile environment, rather than a discrete discriminatory act. In addition, summary judgment was proper as to each of Plaintiff's claims, which are discussed below, even if the time barred events are considered.

{12} First, Plaintiff has not shown that she was subject to a hostile work environment. A hostile environment is created "when the offensive conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Ocana*, 2004–NMSC–018, ¶ 23, 135 N.M. 539, 91 P.3d 58 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). When determining whether a work environment was hostile or abusive, we look at "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ocana*, 2004–NMSC–018, ¶ 24, 135 N.M. 539, 91 P.3d 58 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). A plaintiff must show that the work environment was both objectively and subjectively hostile: "one that a reasonable person would find hostile or abusive and one that the employee did perceive as being hostile or abusive." *Id.* "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Nava v. City of Santa Fe*, 2004–NMSC–039, ¶ 13, 136 N.M. 647, 103 P.3d 571 (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). The United States Supreme Court, interpreting Title VII, has clarified that the statute is not "a general civility code" and "requires neither asexuality nor androgyny in the workplace," therefore, "ordinary socializing in the workplace[ ]such as male-on-male horseplay or intersexual flirtation" should not be mistaken for discriminatory conditions of employment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *see also Slay v. Glickman*, 137 F.Supp.2d 743, 751–52 (S.D.Miss.2001) (holding that occasional suggestive comments, some criticism, and single proposition by supervisor did not amount to discriminatory changes in terms and conditions of employment or create a hostile or abusive working environment).

{13} The alleged harassment in this case was not sufficiently severe and pervasive to support Plaintiff's claim. Over a period of two months, Plaintiff was told several times by a superior that he found her attractive and was asked on one occasion if she was interested in a relationship. He did not pursue the matter after she rebuffed him, and he reduced his contact with her. Plaintiff offered no evidence that her work performance was affected. While we acknowledge

---

**2.** Because it is not presented in this case, we do not address whether equitable doctrines are available to permit claims that could not reason-

ably have been discovered within the statutory time period.

that a reasonable person may have felt uncomfortable in the face of Shuman's comments, simple discomfort over a short period of time is not sufficient to alter the terms and conditions of employment. *Cf. Ocana*, 2004–NMSC–018, ¶¶ 25, 27, 135 N.M. 539, 91 P.3d 58 (holding summary judgment inappropriate where plaintiff claimed that her manager engaged in a pattern of intimidating behavior that made her uncomfortable and affected her work performance). In the absence of additional facts, this relatively isolated incident is not sufficiently severe or serious to support a hostile environment claim. Shuman's "parting shot" does not establish that the environment was hostile. Viewed from the Plaintiff's perspective, she was made to wait five months for a promised raise. Shuman never made any comment connecting this raise to anything other than Plaintiff's job performance, and we do not believe the experience of waiting for a raise, in the absence of evidence of discriminatory withholding of that raise, interferes with working conditions.

{14} Second, Plaintiff has not shown that she was constructively discharged. In order to establish that she was constructively discharged, Plaintiff must meet an even higher standard than that required for sexual harassment. She must show "that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Gormley v. Coca–Cola Enters.*, 2005–NMSC–003, ¶ 10, 137 N.M. 192, 109 P.3d 280 ("Essentially, a plaintiff must show that she [or he] had no other choice but to quit." (*quoting Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir.1997))). As discussed above, Plaintiff's working conditions were not so intolerable that a reasonable person would feel compelled to resign, and the record reflects that Plaintiff herself did not feel any need to resign for five months after the incident. The district court properly granted summary judgment on both the hostile environment and constructive discharge claims.

{15} Third, the district court properly granted Defendant's summary judgment on Plaintiff's quid pro quo sexual harassment claim. "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Federal courts have rejected quid pro quo claims when plaintiffs failed to show an explicit or implicit promise of a benefit or threat of harm in exchange for sexual conduct. *See, e.g., Carter v. New York*, 310 F.Supp.2d 468, 477–78 (N.D.N.Y.2004) (rejecting quid pro quo claim where plaintiff failed to show any nexus between supervisor's attempts to kiss her and denied travel and overtime, when supervisor's superiors had implemented a nondiscriminatory policy against overtime); *Wang v. Metro. Life Ins. Co.*, 334 F.Supp.2d 853, 866 (D.Md.2004) (rejecting quid pro quo claim because plaintiff did not contend that supervisor ever actually threatened to take "tangible employment actions" against her for rebuffing his sexual overtures and no such action was taken). The record does not reflect the " 'conditioning of tangible employment benefits upon the submission to sexual conduct.' " *Ocana*, 2004–NMSC–018, ¶ 23, 135 N.M. 539, 91 P.3d 58 (*quoting Hirschfeld v. New Mexico Corr. Dep't*, 916 F.2d 572, 575 (10th Cir. 1990)). Plaintiff has not alleged that Shuman made any suggestion that her response to his advances would have an impact on her compensation or any other aspect of her employment. Shuman's comment following Plaintiff's resignation cannot establish such a connection because it was not directed at Plaintiff and was offered after her resignation, when he no longer had any influence over the conditions of Plaintiff's employment. Further, Plaintiff has not shown that Shuman took any action to deprive her of a tangible employment benefit after he was rebuffed. In fact, Defendant has shown that Shuman sought a raise on Plaintiff's behalf. Because Plaintiff has not demonstrated that any employment benefit was "conditioned on" her engaging in sexual conduct with Shuman, the district court did not err in

granting summary judgment as to the quid pro quo sexual harassment claim.

{16} Fourth, Plaintiff has not established that she suffered retaliation. To prove a prima facie case of retaliation, Plaintiff must show that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events." *Ocana*, 2004–NMSC–018, ¶ 33, 135 N.M. 539, 91 P.3d 58. While Plaintiff engaged in a protected activity by reporting what she believed to be harassment to her supervisor, she has not made any showing that she suffered any adverse employment action. An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment. *See Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). Plaintiff identifies three comments by Shuman as evidence of retaliation. Shuman asked that Plaintiff keep her in/out marker properly placed, he instructed her that she needed to try to be at work by eight in the morning, and he also asked her supervisor: "What does [Plaintiff] actually do here?" These criticisms are both exceedingly mild and isolated. Plaintiff has not alleged that they were repeated or part of a broader pattern of increased supervision. *Cf. Nava*, 2004–NMSC–039, ¶¶ 14–15, 136 N.M. 647, 103 P.3d 571 (describing a daily pattern of discriminatory behavior by a supervisor taking place over a period of more than a year and holding such behavior harassing). Even if these comments were made with a retaliatory motive, they do not constitute a significant, harmful change in the conditions of employment. Without any showing that these comments were coupled with any more concrete action, they do not rise to the level of an adverse employment action. Having concluded that the district court did not err in granting summary judgment on Plaintiff's substantive claims, we now address Plaintiff's procedural claims.

{17} Plaintiff argues that the trial court did not have the power to grant Defendant's motion for reconsideration. Plaintiff characterizes the motion to reconsider the trial court's partial grant of summary judgment as a motion for new trial under Rule 1–059 NMRA (2006) and argues that the motion was denied because it was not timely granted. We believe this characterization is improper, because the partial grant of summary judgment was not a final judgment. *See Aetna Life Ins. Co. v. Nix*, 85 N.M. 415, 416, 512 P.2d 1251, 1252 (1973); *see also B.L. Goldberg & Assocs., Inc. v. Uptown, Inc.*, 103 N.M. 277, 278, 705 P.2d 683, 684 (1985) (recognizing that "an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible"). Because the partial grant of summary judgment is interlocutory, it is subject to reconsideration by the trial court prior to the entry of a final judgment. Rule 1–054(B)(1) NMRA (2006); *see also Barnett v. Cal M, Inc.*, 79 N.M. 553, 556, 445 P.2d 974, 977 (1968) (observing that "because of the multiple claims in this case and of the failure to obtain a determination by the court making this judgment final, the court retained jurisdiction and had the authority to revise it at any time before the entry of the judgment"). The trial court therefore retained the power to act on Defendant's motion for reconsideration and did not err in granting the motion.

{18} Plaintiff also contends that the trial court erred in denying her motion for reconsideration of summary judgment in favor of Defendant because no hearing on the motion was held. Unlike Defendant's earlier motion, Plaintiff's motion requested reconsideration of a final judgment, summary judgment having been granted as to all claims. Plaintiff's motion is therefore properly characterized as a motion for a new trial under Rule 1–059. A hearing is not required unless the trial court is granting the motion for a new trial for a reason not stated in the motion. Rule 1–059(D); *see New Mexico Feeding Co., Inc. v. Keck*, 95 N.M. 615, 618–19, 624 P.2d 1012, 1015–16 (1981). That situation is not presented here, and the court

was not required to hold a hearing prior to denying Plaintiff's motion.

**CONCLUSION**

{19} For the foregoing reasons, we conclude the district court did not err in granting summary judgment. Therefore, we affirm.

{20} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.