This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39969

HEATHER SANDERS,

   Plaintiff-Appellant,

v.

BOARD OF COMMISSIONERS FOR
BERNALILLO COUNTY,

   Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Court Judge**

Gilpin Law Firm, LLC
Donald G. Gilpin
Christopher P. Machin
Albuquerque, NM

for Appellant

Kennedy, Moulton & Wells, P.C.
Deborah D. Wells
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** Plaintiff Heather Sanders sued her former employer, Defendant Board of Commissioners for Bernalillo County (the County), for employment discrimination under the Human Rights Act (HRA), NMSA 1978, §§ 28-1-1 to -15 (1969, as amended through

2023),[1] following the termination of her employment as an emergency communications officer. Sanders appeals the district court's grant of summary judgment in favor of the County on her claims of hostile work environment on the basis of sex[2] and wrongful termination on the basis of sex and in retaliation for reporting discrimination. We affirm.

**DISCUSSION**

**{2}** Because this is an unpublished, memorandum opinion written solely for the benefit of the parties, and the parties are familiar with the factual and procedural background of this case, we omit a background section and discuss the facts only as necessary to our analysis of the issues. "We review the district court's grant of summary judgment de novo." *Ulibarri v. N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 7, 139 N.M. 193, 131 P.3d 43; *see id.* (providing that "[s]ummary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law"). We, nonetheless, emphasize that Sanders, as the appellant, bears the burden of persuading us that the district court erred. *See Goodman v. OS Rest. Servs. LLC*, 2020-NMCA-019, ¶ 16, 461 P.3d 906 ("[T]here is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (alterations, internal quotation marks, and citation omitted)). Taking Sanders' HRA claims in turn, we conclude she has not met this burden.

**I.     Hostile Work Environment Based on Sex**

**{3}** Sanders contends she was subjected to a hostile work environment because of her sex, in violation of the HRA. *See* § 28-1-7(A) ("It is an unlawful discriminatory practice for . . . an employer . . . to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . sex."). "Hostile environment claims are based on the cumulative effects of [harassing] acts, and these separate acts constitute a single unlawful employment practice: the practice of requiring an employee to work in a discriminatory, hostile or abusive environment." *Ulibarri*, 2006-NMSC-009, ¶ 10. Generally, to make out a hostile work environment claim, an employee must make two basic showings. *See Deflon v. Sawyers*, 2006-NMSC-025, ¶ 19, 139 N.M. 637, 137 P.3d 577; *see also Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 6, 136 N.M. 647, 103 P.3d 571 (listing the elements of a hostile work environment claim). First, an employee must show that they were subjected to an objectively and subjectively hostile work environment. *See Ulibarri*, 2006-NMSC-009, ¶ 12; *see also Herald v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-104, ¶ 53, 357 P.3d 438 (providing that, to make out a hostile work environment claim, the harassing conduct must be "so severe and pervasive that the workplace is transformed into a hostile and abusive environment for the employee" (omission, internal quotation

---

[1] Even though some sections of the HRA were amended after the incidents giving rise to Sanders' claims occurred, *see, e.g.*, § 28-1-7 (amended 2019, 2020, 2023), we cite the current version of the HRA throughout this opinion because the amendments are not material to our resolution of the issues in this case.

[2] The parties interchangeably refer to "sex" and "gender" when discussing Sanders' HRA claims. Throughout this opinion, we exclusively use "sex" to refer to Sanders' claims.

marks, and citation omitted)). Second, they must show that the harassing conduct occurred because of their sex. *See Nava*, 2004-NMSC-039, ¶ 6 (requiring that "the harassment occurred because of the employee's sex"); *Deflon*, 2006-NMSC-025, ¶ 19 (requiring that the alleged conduct "stemmed from a sexual animus" (internal quotation marks and citation omitted)).

**{4}**     In its motion for summary judgment, the County, citing numerous authority, argued that Sanders failed to establish the alleged harassing conduct occurred because of her sex. In response, Sanders cited a single case setting out the general legal standard for sexual harassment under a hostile work environment theory. Sanders otherwise listed conduct by her trainers and supervisors, including unwelcome comments of a sexual nature, that she contended amounted to sexual harassment. Sanders, however, failed to explain, with citation to pertinent authority, why this conduct stemmed from sexual animus or occurred because of her sex. Based on this presentation, the district court concluded that Sanders failed to make a showing that the alleged harassing conduct occurred because of her status as a woman.

**{5}**     On appeal, Sanders does little to demonstrate that the district court's conclusion was error. *See Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261 ("[I]t is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred."). In her appellate briefing, Sanders—copying her response to the County's motion for summary judgment word for word—sets out the same list of alleged harassing conduct by her trainers and supervisors. As before, Sanders fails to explain, with citation to pertinent authority, why this conduct stemmed from sexual animus or occurred because of her sex. *See Valerio v. San Mateo Enters., Inc.*, 2017-NMCA-059, ¶ 45, 400 P.3d 275 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." (internal quotation marks and citation omitted)).

**{6}**     Instead, Sanders cites *Nava* for the general principle that sex does not have to be the sole motivating factor to state a valid sexual harassment claim. 2004-NMSC-039, ¶ 8. Be that as it may, Sanders fails to cite authority supporting her contention that the alleged harassing conduct was based, even in part, on Sanders' sex. The single case Sanders cites in support of her argument that the alleged harassing conduct was motivated by her sex—*Cummings v. Koehnen*, 556 N.W.2d 586 (Minn. Ct. App. 1996), *aff'd*, 568 N.W.2d 418 (Minn. 1997)—is inapposite. *Cummings* provides that "sexual harassment" may be shown if "the conduct or communication [is] of a sexual nature." *Id.* at 589. In setting out this standard, the Minnesota Court of Appeals relied on the statutory definition of "sexual harassment" adopted by the Minnesota Legislature. *Id.* No such definition exists within the HRA, and existing New Mexico precedent suggests that such a definition may not be appropriate under the HRA. *See Ulibarri*, 2006-NMSC-009, ¶ 12 (explaining that an analogous federal civil rights act is not to be construed as "a general civility code and requires neither asexuality nor androgyny in the workplace" (internal quotation marks and citation omitted)). Regardless, Sanders has failed to explain why this Court should import an out-of-state statutory definition into the HRA,

and we decline to do so today. *See State v. Stevenson*, 2020-NMCA-005, ¶ 20, 455 P.3d 890 ("We will not address an undeveloped argument or perform [an appellant's] research.").

**{7}** Facing the verbatim arguments offered to the district court and being provided no cogent, well-developed, or well-supported argument why the district court erred in rejecting such arguments, we have been given no reason to reach a result contrary to the district court's and we decline to do so. *See Goodman*, 2020-NMCA-019, ¶ 16. We accordingly affirm the district court's grant of summary judgment on Sanders' hostile work environment claim.

## II.   Wrongful Termination Based on Sex or in Retaliation for Reporting Discrimination

**{8}** Next, Sanders argues that she was wrongly terminated on the basis of sex or in retaliation for reporting discrimination to her employer. *See* § 28-1-7(A) (prohibiting employment discrimination on the basis of sex); § 28-1-7(I)(2) (prohibiting retaliation "against [an employee] who has opposed any unlawful discriminatory practice or has filed a complaint" under the HRA). Our Supreme Court has recognized that, in cases like this one, in which direct proof of discrimination is lacking, the "evidentiary methodology developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 . . . (1973), . . . provide[s] guidance in interpreting the [HRA]." *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 15, 124 N.M. 633, 954 P.2d 65; *see Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 8-10, 109 N.M. 514, 787 P.2d 433 (recognizing the *McDonnell Douglas* test as a useful framework for evaluating HRA claims); *see also Juneau v. Intel Corp.*, 2006-NMSC-002, ¶¶ 9, 23, 139 N.M. 12, 127 P.3d 548 (applying the *McDonnell Douglas* framework in the retaliation context). When asserting discrimination or retaliation under the *McDonnell Douglas* framework, the employee bears the initial burden of establishing a prima facie case. *See Cates*, 1998-NMSC-002, ¶¶ 15-16. Once a prima facie case is established, "the burden shifts to the employer to show a legitimate non-discriminatory reason for its decision." *Id.* If such a reason is produced, the burden shifts back to the employee to prove that the employer's reason was "pretextual or otherwise inadequate." *Garcia v. Hatch Valley Pub. Schs.*, 2018-NMSC-020, ¶ 28, 458 P.3d 378 (internal quotation marks and citation omitted).

**{9}** In this case, the district court appears to have concluded that Sanders failed to make a prima facie case for sex discrimination and retaliation, but that even if a prima facie case was made, the County advanced a legitimate, nondiscriminatory reason for Sanders' termination and Sanders failed to establish this reason was pretextual. We assume for purposes of our analysis that Sanders met her initial burden of establishing a prima facie case for sex discrimination and retaliation. We thus focus our analysis on whether the County has advanced a legitimate, nondiscriminatory reason for Sanders' termination. Concluding the County has made such a showing, we then address whether Plaintiff has established pretext.

**{10}**     As for the County's legitimate, nondiscriminatory reason, the County asserts that Sanders' termination was neither improperly based on her sex nor retaliatory, but rather was because of her poor job performance. The County explained that, at the time of her termination, Sanders was a probationary employee in training and that Sanders was terminated due to her inability to adequately perform her job duties, which put officers' safety at risk; her repeated arguments with trainers and supervisors; her lack of improvement over the training period; and the fact that she was given nearly double the typical training time of other trainees. The County's proffered nondiscriminatory reason for Sanders' termination is supported by considerable evidence in the record—namely, reports, emails, and complaints made by Sanders' trainers and supervisors regarding her behavior and inadequate job performance. From this record, we easily conclude that the County has met its burden of providing a legitimate, nondiscriminatory reason for Sanders' termination. *See id.* ¶¶ 34-36 (concluding that an employer met its burden of providing a legitimate, nondiscriminatory reason for termination where the termination was based on "extensive evidence," including poor evaluations, incidents stemming from unsatisfactory workplace performance, and internal complaints).

**{11}**     The burden thus shifted to Sanders to show that the County's reason was pretextual. *See id.* ¶ 28. Both below and on appeal, Sanders relies exclusively on the testimony of Carly Huffman, the supervisory coordinator for the emergency communications department at the County, as proof of pretext. Specifically, Plaintiff cites Huffman's view that Sanders should not have been terminated because, according to Huffman, Sanders did not receive adequate training, the reports describing Sanders' deficient job performance were not always accurate, Sanders had good explanations for her trainers' complaints about her job performance, and Sanders was not argumentative. Plaintiff contends Huffman's beliefs are enough to raise a genuine issue of material fact as to whether the County's stated reasons were pretextual.

**{12}**     In response, the County points out that it is undisputed that the emergency communications department director, Vernon Thompson, was solely responsible for the decision to terminate Sanders.3 This is relevant to determining whether Sanders has established pretext because, according to the County, "the Court must examine the facts as they appear to the person making the [termination] decision." In support, the County, as it did before the district court, relies on various cases from the United States Court of Appeals for the Tenth Circuit. *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91 P.3d 58 (providing that, "when considering claims under the [HRA], [our courts] may look at federal civil rights adjudication for guidance"). Among other authorities, the County cites *Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013). In that case, the federal appellate court explained, "In assaying the employer's [nondiscriminatory] explanation, we examine the facts as they appear *to the person making the decision.*" *Id.* at 1174 (internal quotation marks and citation omitted).

---

3In her deposition, Huffman acknowledged that the director is always the final decision-maker when it comes to termination decisions. And while Huffman testified that she did not agree with the decision to terminate Sanders, she conceded the irrelevance of her personal beliefs, stating, "[I]t doesn't matter what I believe, personally. When you have documentation upon documentation upon documentation that cites all of the key concerns, that is very difficult to argue with."

Because Thompson was the sole decision-maker in terminating Sanders, Huffman's beliefs, according to the County, "are immaterial and irrelevant" in assessing whether Sanders established pretext. Further, the County argues that, because Sanders has made no argument, nor cited any evidence, establishing that Thompson's stated reasons for terminating Sanders were pretextual, Sanders has failed to establish pretext.

**{13}** In her reply brief, Sanders does not discuss the federal authority cited by the County or even suggest that the legal principles advanced by the County, as outlined above, are erroneous. And in view of the County's unrefuted legal standard, Sanders makes no contention that Huffman's beliefs were known to Thompson[4] or are otherwise relevant to the determination of whether Sanders has established pretext. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (providing that an appellate court will not guess at what a party's argument might be or develop a party's arguments for them). In fact, Sanders, in her reply brief, advances no responsive argument and fails even to mention pretext. *See Vanderlugt v. Vanderlugt*, 2018-NMCA-073, ¶ 49, 429 P.3d 1269 (holding that an issue may be deemed conceded where the reply brief was silent regarding an argument raised in the answer brief). Suffice it to say, Sanders does nothing to persuade us that the pretext arguments advanced by the County, and presumably relied on by the district court, are incorrect.[5] *See Goodman*, 2020-NMCA-019, ¶ 16. We accordingly affirm the district court's grant of summary judgment on Sanders' wrongful termination and retaliation claims.

**CONCLUSION**

**{14}** For the foregoing reasons, we affirm.

**{15}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**

---

[4]Thompson affirmed in his affidavit that "Huffman did not indicate to [him] that she was of the opinion that . . . Sanders should continue with her training as a[n e]mergency [c]ommunications [o]perator."

[5]We emphasize that our affirmance should not be viewed as an acceptance of the County's view on pretext. Instead, we affirm because Sanders does not persuade us of error.