This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40896

**JUDITH TALLMAN,**

Plaintiff-Appellee/Cross-Appellant,

v.

**BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,**

Defendant-Appellant /Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Joshua A. Allison, District Court Judge**

Law Office of Jamison Barkley, LLC
Jamison Barkley
Santa Fe, NM

Feferman, Warren & Mattison
Nicholas Mattison
Albuquerque, NM

for Appellee/Cross-Appellant

Wiggins, Williams & Wiggins, P.C.
Patricia G. Williams
Lorna M. Wiggins
Albuquerque, NM

for Appellant/Cross-Appellee

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Board of Regents of the University of New Mexico appeals from a jury verdict in favor of Plaintiff Judith Tallman regarding her claims alleging hostile work environment on the basis of her gender, constructive discharge, and retaliation, all of which the jury found to be in violation of the New Mexico Human Rights Act (NMHRA or the Act), NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2024). Defendant raises numerous issues on appeal, broadly challenging the jury's verdict for lack of support by sufficient evidence, its award of damages, and various related district court rulings. Plaintiff has filed a cross-appeal seeking reversal of the district court's order denying her application for an attorney fee multiplier. For the reasons set forth below, we affirm.

## DISCUSSION

**{2}** Plaintiff, a prior employee of the University of New Mexico Hospital (UNMH), filed suit against Defendant and various other UNMH employees with whom she previously worked, alleging the above violations of the NMHRA. Plaintiff's claims generally arise out of a pattern of alleged sexual harassment, intimidation, and bullying she suffered at the hands of one of her colleagues, a woman named Linda Villegas, with whom Plaintiff worked during Plaintiff's two years of employment at UNMH. Plaintiff contended that Villegas's actions toward her, and the repeated failure of Plaintiff's supervisors to address the situation, created an intolerable hostile working environment that ultimately left Plaintiff with no choice but to resign. After Plaintiff's resignation, she was placed on a "do-not-hire" list by one of her former supervisors, UNMH's then-chief financial officer (CFO) Ella Watt. Plaintiff claimed such a designation was unlawful retaliatory conduct in response to her complaints about Villegas's behavior, complaints which Plaintiff alleges are protected conduct under the NMHRA. *See* § 28-1-7(I)(2) (prohibiting retaliation "against any person who has opposed any unlawful discriminatory practice or has filed a complaint").

**{3}** The case proceeded to a jury trial after which the jury returned a verdict in favor of Plaintiff on all of her claims, and awarded her $800,000 in compensatory damages. Defendant appeals, advancing numerous arguments related to the sufficiency of evidence presented by Plaintiff, various district court rulings, and the jury's award of damages. We address each argument in turn before turning to Plaintiff's cross-appeal.

## I. Defendant's Appeal

## A. Applicability of the NMHRA

**{4}** Defendant first asserts that the plain meaning of "employee," as it is defined by the NMHRA, renders the Act "applicable to only current employees and applicants, not former employees." *See* § 28-1-2(E) (defining "employee" as "any person in the employ of an employer or an applicant for employment").[1] Defendant continues that Plaintiff,

---

[1] In briefing to this Court, Defendant places this argument within its section related to Plaintiff's claim regarding retaliation. Nonetheless, Defendant's argument is presented in broad terms and may be read to apply generally to all of Plaintiff's claims arising under the NMHRA. Indulging Defendant's argument to

who filed the instant lawsuit after she resigned from Defendant's employ, was not an "employee" within the meaning of the NMHRA at the time she filed, and she may not advance a case against Defendant for violating the Act's various provisions. We disagree.

**{5}** Whether Plaintiff may file her claims under the NMHRA is a question of law we review de novo. *South v. Lujan*, 2024-NMCA-049, ¶ 4, 550 P.3d 856. If the plain meaning of a statute is clear and unambiguous, we give effect to the statute's language and refrain from further interpretation. *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153. Here, the plain meaning of the NMHRA rebuts Defendant's argument by prohibiting an employer's unlawful discriminatory practice toward "any person," rather than merely "employees." *See* § 28-1-7(A), (I)(2). The Act states:

It is an unlawful discriminatory practice for:

> A.      an employer . . . to discharge . . . or to discriminate in matters . . . of employment against *any person* otherwise qualified because of . . . gender.
>
> . . . .
>
> I.      any person or employer to:
>
> . . . .
>
> (2)      engage in any form of threats, reprisal or discrimination against *any person* who has opposed any unlawful discriminatory practice.

*Id.* (emphasis added). Defendant does not address these provisions of the NMHRA in its argument to this Court. Rather, Defendant isolates the Act's definition of "employee" to conclude that prior employees must be excluded from its protections. *See* § 28-1-2(E). However, we do not read Section 28-1-2(E)—particularly in light of the above statutory excerpt—to limit the capacity of former employees to file suit under the NMHRA. Indeed, such a conclusion would render a claim for constructive or retaliatory discharge, claims necessarily brought by *former* employees, a nullity and is an interpretation of the Act we decline to endorse. *See* § 28-1-7(A) (expressly contemplating unlawful discharge); *see also Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.3d 1236 ("Statutes must be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)); *cf. Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, ¶¶ 6-7, 23-24, 150 N.M. 17, 256 P.3d 29 (affirming a jury verdict in favor of

---

the fullest extent possible, and because our holding does not prejudice Plaintiff, we interpret Defendant's argument to apply to all Plaintiff's NMHRA claims.

the plaintiff regarding constructive discharge under the NMHRA when the plaintiff filed her case *after* she resigned).

**{6}** Here, Plaintiff is a former employee of Defendant who believes she suffered violations of the NMHRA during her tenure with UNMH, and the plain language of neither Section 28-1-2(E) nor Section 28-1-7 limits the Act's protections to only "employees and applicants," as Defendant wishes. Indeed, Defendant has presented us with no authority that a person in such position may not file suit under the NMHRA. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We, therefore, conclude Plaintiff's claims, including her claim regarding retaliation, were properly filed under the NMHRA, and we reject Defendant's argument to the contrary.

## B.   Sufficiency of the Evidence Regarding the Jury Verdict

**{7}** Defendant next argues that the jury's verdict, in which it found Defendant liable for three separate violations of the NMHRA, is unsupported by sufficient evidence. As stated, the jury found Defendant (1) created a hostile work environment on the basis of Plaintiff's gender, (2) constructively discharged Plaintiff, and (3) retaliated against Plaintiff after she resigned from UNMH. Defendant asserts that each of these findings lacks sufficient evidentiary support, and this Court should reverse. We address each argument in turn.

**{8}** Sufficient evidence is "such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Weststar Mortg. Corp. v. Jackson*, 2003-NMSC-002, ¶ 8, 133 N.M. 114, 61 P.3d 823 (internal quotation marks and citation omitted). When considering whether admitted evidence is sufficient to support a jury verdict, "this Court views the evidence in a light most favorable to the prevailing party and disregards any inferences and evidence to the contrary." *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 13, 143 N.M. 506, 177 P.3d 1080 (alteration, internal quotation marks, and citation omitted). "[A]ppellate reversal of jury verdicts must be done cautiously and only under a strict standard of review in order to safeguard a litigant's constitutional right to a jury trial." *Goodman v. OS Rest. Servs. LLC*, 2020-NMCA-019, ¶ 26, 461 P.3d 906 (internal quotation marks and citation omitted). "We defer to the jury's determination regarding the credibility of witnesses and the reconciliation of inconsistent or contradictory evidence." *Littell*, 2008-NMCA-012, ¶ 13. "We simply review the evidence to determine whether there is evidence that a reasonable mind would find adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

### 1.   Hostile Work Environment

**{9}** The NMHRA protects against discriminatory treatment by employers based on a person's membership in one of several enumerated groups, such as race, gender, or sexual identity. *See* § 28-1-7(A); *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 14, 139 N.M. 12, 127 P.3d 548. The Act is not a generic civil code that provides remedies for nondiscriminatory conduct, however harassing. *See Juneau*, 2006-NMSC-002, ¶ 14

("The NMHRA protects against discriminatory treatment, not against general claims of employer unfairness."). Nonetheless, patterns of persistent sexual harassment may establish discrimination on the basis of gender actionable under the NMHRA. *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶¶ 23-24, 135 N.M. 539, 91 P.3d 58 ("Sexual harassment is a form of discrimination that is prohibited by the NMHRA."). To prevail on a claim that sexual harassment created a hostile working environment in violation of the NMHRA, a plaintiff must prove: (1) the employee was subjected to unwelcome sexual harassment; (2) that the harassment occurred because of the employee's sex; (3) that such harassment was sufficiently severe or pervasive that it created an abusive work environment affecting a term, condition, or privilege of employment, and; (4) the employer knew, or should have known, of the harassment and failed to take remedial action. *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 6, 136 N.M. 647, 103 P.3d 571. A plaintiff need not establish such elements by direct evidence and may instead prove unlawful discrimination through circumstantial means. *See Smith v. FDC Corp.*, 1990-NMSC-020, ¶ 10, 109 N.M. 514, 787 P.2d 433 ("[O]ften direct proof of discrimination is not available.").

**{10}** Defendant challenges the evidentiary propriety of the jury's finding that Plaintiff was subjected to a hostile working environment due to gender discrimination. Defendant advances its argument in essentially two parts: first, Defendant asserts that there exists no evidence that any harassment suffered by Plaintiff was based on her gender. Second, Defendant claims that, even if some of the harassment suffered by Plaintiff was so impermissibly motivated, such was limited to brief instances and insufficient to establish Plaintiff suffered a hostile working environment.

**{11}** Reviewing the evidence presented by Plaintiff at trial, we conclude that a reasonable jury could have found Villegas's treatment of Plaintiff to be discrimination on the basis of Plaintiff's gender and that such treatment created a hostile working environment in violation of the NMHRA. The evidence also sufficiently supports the jury's determination that Defendant, as Plaintiff's employer, knew or should have known of the harassment and failed to take remedial action. The jury heard evidence that Villegas discussed her prior lesbian relationships with Plaintiff during their first week of work together, including Villegas's experience with lesbian sex; during their first year of employment at UNMH, Villegas repeatedly hugged and kissed Plaintiff via a small "peck" on the cheek or head while at work and over Plaintiff's expressly stated objections; Villegas gave Plaintiff several unsolicited gifts such as food, perfume, lotion, and a bracelet throughout their employment together; and Plaintiff repeatedly complained about Villegas's actions in this regard to her supervisor, Catherine Porto, beginning in Plaintiff's first two weeks of her employment at UNMH. Porto never addressed Villegas's behavior. Plaintiff also testified that Villegas's behavior toward her escalated from sexual harassment to hostility, bullying, and intimidation during their second year of employment together. At one point, Plaintiff heard from an unidentified person that Villegas once called her a "bitch." The evidence further shows that Plaintiff's relationship with Villegas deteriorated to such a degree that the two had a verbal altercation at work after which Plaintiff felt she had no choice but to resign.

**{12}** On appeal, Defendant points to other evidence in the record that undermines or contradicts Plaintiff's contention that her gender was the cause of the hostile work environment. We reiterate, however, that our standard in gauging sufficiency is to view "the evidence in a light most favorable to the prevailing party and disregard[] any inferences and evidence to the contrary." *Littell*, 2008-NMCA-012, ¶ 13 (internal quotation marks and citation omitted). As such, the evidence admitted at trial reasonably supports the conclusion that Villegas sexually harassed Plaintiff, and such activity constitutes gender discrimination under the NMHRA. *See Ocana*, 2004-NMSC-018, ¶ 23. Regarding contradictory evidence, the jury was instructed that it could consider the totality of the circumstances present, including the frequency, severity, and threatening or humiliating nature of the offending conduct. The jury was, thus, at liberty to weigh testimony contradicting Plaintiff's claims against the totality of circumstances of the case, and we will not now upset its verdict which is reasonably supported by the evidence. *See Littell*, 2008-NMCA-012, ¶ 13 ("We defer to the jury's determination regarding the credibility of witnesses and the reconciliation of inconsistent or contradictory evidence.").

**{13}** The evidence presented is also sufficient to support the jury's conclusion that the harassment suffered by Plaintiff was so severe and pervasive that it created a hostile working environment. *See Nava*, 2004-NMSC-039, ¶ 6 ("[T]he harassment [must be] sufficiently severe or pervasive to create an abusive work environment affecting a term, condition, or privilege of employment." (internal quotation marks and citation omitted)). On this point, Defendant essentially argues that Plaintiff's complaints regarding Villegas's behavior were either too inaccurate or inadequate to support a conclusion that the harassment was severe or pervasive. Defendant points out that Plaintiff did not complain to anyone about the gifts, never complained that Villegas's other behavior was based on Plaintiff's gender, and never made a complaint with UNMH human resources (HR) alleging sexual harassment as required by UNMH policy. Defendant further points out that Plaintiff never disciplined Villegas for her conduct even when Plaintiff was Villegas's supervisor.

**{14}** We read Defendant's arguments to essentially be that it established the affirmative defense against hostile work environment claims discussed in *Ocana*. *See* 2004-NMSC-018, ¶ 26 (requiring, to rebut such a claim, that (1) the employer exercised reasonable care in preventing and promptly correcting sexual harassment, "and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm"). We are unpersuaded by Defendant's argument. The jury was instructed on the two-part defense and heard the following evidence. Plaintiff testified that she reported Villegas's inappropriate behavior to their collective supervisor, Porto, repeatedly and often during her employment. While Plaintiff did not make any report with HR, as UNMH policy requires, neither did Porto, who was also required to report sexual harassment to HR under the same policies. Despite Plaintiff's complaints, the evidence suggests Porto never did anything to meaningfully address the issue. Viewed in the light most deferential to the jury verdict, we conclude the evidence reasonably supports a conclusion that Defendant did not

exercise reasonable care in correcting Villegas's behavior, and Defendant did not satisfy its burden in establishing the affirmative defense.

**{15}** In sum, the evidence sufficiently supports a reasonable determination that Villegas sexually harassed Plaintiff through a pattern of unwanted conduct, including inappropriate touching of a physically intimate nature, bullying, intimidation, and other harassment, and such conduct was so pervasive and severe that it constitutes actionable gender discrimination under the NMHRA. We, therefore, conclude that sufficient evidence supports the jury's verdict regarding the existence of a hostile work environment on the basis of Plaintiff's gender.

## 2.       Constructive Discharge

**{16}** Defendant similarly argues that the jury's determination Plaintiff was constructively discharged by Defendant lacks sufficient evidentiary support. Defendant points out that Plaintiff voluntarily resigned; she never suffered any form of adverse employment action, such as demotion, transfer, or loss of pay; Plaintiff was looking for another job before she resigned; and Plaintiff only resigned after an altercation between her and Villegas for which discipline against both women was being contemplated. We disagree with Defendant's argument and conclude sufficient evidence exists to support the jury's verdict.

**{17}** To establish that she was constructively discharged under the NMHRA, Plaintiff must have shown "that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Ulibarri v. N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 14, 139 N.M. 193, 131 P.3d 43 (internal quotation marks and citation omitted). The jury was so instructed in this case, and we address sufficiency of the evidence in context with the instructions given. *See Littell*, 2008-NMCA-012, ¶ 41.

**{18}** As discussed previously in this opinion, there is sufficient evidence that Defendant subjected Plaintiff to a hostile working environment due to sexual harassment, bullying, and intimidation. The only remaining question as it pertains to constructive discharge, then, is whether Defendant made the working conditions so intolerable that Plaintiff reasonably felt forced to resign. Plaintiff testified that she repeatedly complained about Villegas's behavior to Porto, but Porto would just "laugh it off." Plaintiff described to the jury how Villegas's behavior evolved into taunting and demands that Plaintiff do Villegas's work for her. Plaintiff continued to complain to Porto about Villegas's changing behavior, but no corrective action was taken. Plaintiff testified that despite her complaints, Porto continued to put Plaintiff and Villegas on projects together that exacerbated the problem. According to Plaintiff's testimony, Villegas's harsh treatment of her, and their various supervisors' failure to address the problem, culminated in an altercation between Plaintiff and Villegas that left Plaintiff with no choice but to resign. During the altercation, Villegas came to Plaintiff's office to discuss a project the two of them were working on together, the two became increasingly hostile toward one another, forcing Plaintiff to ask Villegas to leave her office, Villegas started

screaming at Plaintiff, and Plaintiff had to yell at Villegas to leave her office so that other employees would "come to [her] aid." Plaintiff explained that she felt threatened and unsafe during the encounter and that things "had gone too far." Plaintiff further testified that, after this altercation, she concluded the situation would not improve and she resigned from UNMH.

**{19}** Defendant's argument that the above circumstances do not sufficiently support a claim of constructive discharge essentially asks this Court to substitute our view of the evidence for that of the jury's, which we decline to do. *See Littell*, 2008-NMCA-012, ¶ 48 ("It is not our role to reweigh the evidence or substitute our judgment for that of the jury."). The above evidence establishes that (1) Plaintiff was suffering from an abusive and hostile working environment, (2) Defendant knew of this, and (3) Defendant took no action to remedy or even address the situation. Such evidence is sufficient to support a reasonable trier-of-fact's determination that Defendant "made working conditions so intolerable . . . that [Plaintiff felt] compelled to resign." *See Ulibarri*, 2006-NMSC-009, ¶ 14 (internal quotation marks and citation omitted). Thus, we conclude the evidence sufficient to support the jury's verdict that Plaintiff was constructively discharged by Defendant.

### 3. Retaliation

**{20}** Defendant last challenges the sufficiency of evidence presented at trial as it relates to the jury's finding that Defendant unlawfully retaliated against Plaintiff for her complaints regarding Villegas's behavior. *See* § 28-1-7(I)(2). Defendant argues that Plaintiff fails to satisfy each element of the three-prong test for retaliation claims discussed in *Ocana. See* 2004-NMSC-018, ¶ 33. We disagree.

**{21}** To prove that Defendant retaliated against Plaintiff in violation of the NMHRA, Plaintiff had to show: "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between these two events." *See id.* In Plaintiff's theory of the case, as shown through her closing argument and the jury instructions issued, the protected conduct at issue is the making of her repeated complaints to Porto about Villegas's discriminatory behavior. The filing of such complaints, regardless of their veracity, is a protected activity under the NMHRA. *See* § 28-1-7(I)(2). Defendant's retaliation, Plaintiff alleges, is the constructive discharge she suffered and the ensuing placement on a University of New Mexico (UNM)-internal "do-not-hire" list that prevented her from gaining subsequent employment. Plaintiff urges that such retaliation occurred because Plaintiff filed the above-described complaints.

**{22}** On appeal, Defendant asserts Plaintiff fails all three elements of the above test. First, Defendant argues that Plaintiff failed to adequately report Villegas's alleged misconduct because she did not follow UNMH policy requiring such complaints to be filed with HR. Second, Defendant claims Plaintiff never suffered an adverse employment action. It asserts Plaintiff never lost pay, was not demoted, and voluntarily resigned rather than suffering termination. Notably, in briefing to this Court, Defendant addresses Plaintiff's placement on the "do-not-hire" list in merely conclusory fashion,

stating that once Plaintiff challenged the designation, she was removed from the list. Lastly, Defendant asserts that, even if Plaintiff's resignation can be considered an adverse employment action, Plaintiff failed to establish a causal connection between the filing of her complaints and her resignation. Defendant states that "there must be a very close temporal proximity between the protected activity and the adverse action," and concludes that Villegas's "unwanted touching" of Plaintiff ended well over a year before Plaintiff resigned.

**{23}** Defendant's arguments are unpersuasive. As to the first prong of the retaliation test, regarding Plaintiff's engagement in a protected activity, Defendant states Plaintiff failed to follow UNM policy by failing to file a complaint with HR and that "[i]t is undisputed that Plaintiff made no other report of alleged harassment to anyone while she was employed with UNM." This contention is patently contradicted by the record before us. Although Plaintiff never complained to HR before she resigned, Plaintiff testified repeatedly that she complained to Porto about Villegas's behavior "throughout [her] tenure" at UNMH, "start[ing] with the first week." Indeed, the testimony shows that Plaintiff continued to complain even into her second year of employment about Villegas's hostile and intimidating harassment, which occurred up to the day Plaintiff resigned. As stated, the record shows Plaintiff did not complain to HR until after she quit, but internal employee policy and procedures do not take the place of statutory law, which in this case only requires that Plaintiff "has opposed any unlawful discriminatory practice." *See* § 28-1-7(I)(2). Plaintiff's complaints to her supervisor satisfy this requirement.

**{24}** As to the second element of the retaliation test, requiring an adverse employment action, *see Ocana*, 2004-NMSC-018, ¶ 33, we have previously explained in this opinion that the evidence admitted supports a determination that Plaintiff was constructively discharged. While such alone establishes that Plaintiff suffered a hostile employment action, the evidence at trial showed that Plaintiff was placed on a "do-not-hire" list after she left UNMH. Plaintiff testified that being placed on this list "cut [her] out of a lot of opportunities for working in the Albuquerque area" and that she has since applied for several hundred jobs without having found permanent, full-time employment. Plaintiff further explained to the jury that she never received an explanation as to why she was placed on the do-not-hire list, but once she challenged such placement, she was removed therefrom. Despite Plaintiff's apparent removal from the list, she explained that subsequent UNM affiliated offices to which she applied refused to hire her. Although there was also testimony that Plaintiff was placed on the do-not-hire list for reasons other than retaliation, such as insubordination, we will not reweigh such testimony and substitute our determination for that of the jury's. *See Littell*, 2008-NMCA-012, ¶ 13 ("We defer to the jury's determination regarding the credibility of witnesses and the reconciliation of inconsistent or contradictory evidence."). When viewed in a light most favorable to the verdict, this evidence sufficiently supports a determination that Plaintiff suffered an adverse employment action.

**{25}** Lastly, Defendant argues that Plaintiff's complaints about her treatment at UNMH and the above adverse employment actions are not causally related. Defendant states,

"[T]he unwanted touching ended in March or April of 2016 and [Plaintiff] had no reason to complain after that." Defendant concludes that Plaintiff's last complaint—about sexual harassment—was "over a year" before her resignation, which occurred in 2017. However, as we explained above, Plaintiff also complained about Villegas's hostile treatment of her that began in their second year of employment together. Moreover, Defendant's statement that Plaintiff "had no reason to complain" after Villegas's behavior changed from unwanted touching to hostility ignores a substantial portion of the evidence related to Plaintiff's claim regarding a hostile work environment, including Plaintiff's repeated testimony that she continued to complain about Villegas's behavior after the hugging and kissing ceased. We therefore conclude there to be sufficient evidence supporting all three elements of the retaliation test, *see Ocana*, 2004-NMSC-018, ¶ 33, and affirm the jury's verdict in that regard.

## C.      Hearsay Evidence

**{26}**    Defendant contends that the district court erroneously admitted statements from several witnesses, each of whom worked for the University of New Mexico Medical Group (UNMMG), as nonhearsay statements of a party opponent under Rule 11-801(D)(2)(d) NMRA. Defendant presents the same argument that it did before the district court: namely, that UNM and UNMH are entities legally distinct from UNMMG and any statement by an employee of the latter not called to testify is, thus, not a statement by a party opponent and constitutes inadmissible hearsay. We conclude the district court did not abuse its discretion in admitting the challenged testimony and explain.

**{27}**    After Plaintiff resigned from UNMH, she applied for a similar position at UNMMG. During trial, Plaintiff called Lee Brown and Rebecca Ruddell, both employees of UNMMG who reviewed Plaintiff's application, to testify about the effect of Plaintiff's "do-not-hire" designation on their hiring determination. Both Brown and Ruddell testified that other UNMMG employees, specifically Patricia Horneffer and Sandra Ross, told them Plaintiff had been placed on a do-not-hire list by UNMH, or had otherwise received negative references therefrom, and that UNMMG could not hire Plaintiff. Defense counsel repeatedly objected to this testimony, arguing that statements Brown and Ruddell heard from other UNMMG employees constitute hearsay because UNMMG is "not a UNM entity," that it is, in fact, "a separate 501(c)(3)," and such testimony is, therefore, not a statement of a party opponent permitted by Rule 11-801(D)(2)(d). The district court denied the objections, ruling that the witnesses may "testify as to what [they] know . . . and how [they] learned of it." Notably, the district court did not specifically address whether UNMMG is a separate entity from Defendant, instead merely admitting the testimony on the above grounds.

**{28}**    A district court's decision to admit or exclude evidence, such as the testimony at issue here, is reviewed for an abuse of discretion. *See Hourigan v. Cassidy*, 2001-NMCA-085, ¶ 21, 131 N.M. 141, 33 P.3d 891. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims*, 1996-NMSC-078, ¶ 65. In addition to establishing

error through abuse of discretion, "the complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." *Hourigan*, 2001-NMCA-085, ¶ 21 (internal quotation marks and citation omitted).

**{29}** Here, the challenged testimony merely amounted to an explanation of how Brown and Ruddell learned that Plaintiff was designated do-not-hire and that she had received negative references from UNMH. Both witnesses went on to testify as to the effect such information had on their hiring process, i.e., that they chose not to hire Plaintiff as a result. Indeed, evidence and testimony aside from that which Defendant is now challenging, and to which Defendant did not object, established the following: (1) Plaintiff had been designated as "do-not-hire" by UNMH Chief Financial Officer, Ella Watt, after resigning from Defendant's employment; (2) UNMMG had been informed of Plaintiff's designation; (3) at least Ruddell believed the do-not-hire list applied to UNMMG hiring decisions; and (4) UNMMG never hired Plaintiff.

**{30}** Thus, assuming without deciding that UNMMG and Defendant are actually separate entities—an assertion for which there is no evidence in the record—and the challenged testimony is, therefore, hearsay not exempted by Rule 11-801(D)(2)(d), Defendant has not shown that it was prejudiced by its admission. *See Hourigan*, 2001-NMCA-085, ¶ 21. Brown and Ruddell's testimony about how they learned Plaintiff was placed on the do-not-hire list has little bearing on the more important evidence indicating that such designation prevented Plaintiff from gaining subsequent employment. We therefore conclude that the district court's admission of the testimony discussed above, even assuming such admission to be erroneous, does not constitute reversible error.

**{31}** Lastly, we note that Defendant baldly suggests that the district court "failed to allow UNM to introduce evidence" regarding whether certain declarants were authorized to make statements on UNM's behalf. Defendant provides no citation to the record regarding this argument, does not otherwise develop it, and offers no legal authority in support of this contention. We therefore decline to address it. "This Court has no duty to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701.

## D.     Economic Damages

**{32}** Defendant next challenges the jury's award of damages. Defendant argues (1) there is "no evidentiary basis" for the jury's award of $350,000 in lost wages; (2) Defendant is entitled to mitigation of damages; and (3) the district court should have remitted the damages awarded. Defendant fails, however, to provide this Court with sufficient citation to the record proper in support of these arguments. "A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition." Rule 12-318(A)(3) NMRA. Defendant's arguments essentially amount to a claim that the jury's award is unsupported by sufficient

evidence, and "[w]e review substantial evidence claims *only if* the appellant apprises the Court of all evidence bearing upon the issue, both that which is favorable and that which is contrary to appellant's position." *Chavez v. S.E.D. Labs.*, 2000-NMCA-034, ¶ 26, 128 N.M. 768, 999 P.2d 412 (emphasis added), *aff'd in part, rev'd in part on other grounds by Chavez v. S.E.D. Labs.*, 2000-NMSC-034, ¶ 1, 129 N.M. 794, 14 P.3d 794. Indeed, as it relates to remittitur, appellant "bears the burden of showing that the record supports its contention that there was error in the verdict." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 51, 127 N.M. 47, 976 P.2d 999. Because Defendant's citations to the record fail to adequately direct this Court to relevant portions of testimony that support its arguments and selectively highlight testimony that is minimally helpful and presents an incomplete understanding of the relevant evidence, we decline to address its arguments.

### E.      Discovery Sanction

**{33}**     Lastly, Defendant challenges a monetary sanction it suffered for a discovery violation committed before trial. Defendant advances two primary arguments: (1) that the sanction itself was improper because Defendant "in good faith, attempted to comply with the shifting requests of Plaintiff and the fluctuating orders of the [district c]ourt," and (2) that the form of the sanction, which the district court assessed as a percentage of the eventual jury award "or $5,000[], whichever is greater," improperly empowered the jury to determine its amount. We disagree and affirm.

**{34}**     The discovery dispute underlying the sanction at issue is lengthy. In general terms, the district court ordered Defendant to produce a supplemental privilege log that "identified with sufficient particularity" previously withheld communications and the authors and recipients thereof. The district court's order excepted from this requirement those communications made between certain groups of people whose discussions were protected by attorney-client privilege *so long as* such communications were made after April 4, 2018, the date on which Plaintiff filed her charge of discrimination against Defendant with the Human Rights Bureau. Due to ongoing discovery concerns, the district court required that Defendant certify it had disclosed or identified in a privilege log "all documents in [its] possession, custody, or control that were responsive to any of Plaintiff's discovery requests." Defendant did so certify, stating that it had disclosed those documents it had "located." Thereafter, Defendant disclosed seventy emails that were responsive to Plaintiff's discovery requests and created before the April 4 deadline.

**{35}**     The district court referred the matter to a special master for investigation and substantially adopted the ensuing special master's report, which concluded that Defendant failed to fulfill its discovery obligations and violated an order of the court. The district court therefore concluded that Defendant's explanation regarding why it did not search for the emails was "woefully inadequate" and that Defendant's assertion that it did not know to search for the communications, some of which involved Defendant's own lawyers, was "not believable." The district court sanctioned Defendant by ordering the following: Defendant (1) waived any claim of privilege as to the emails, (2) must pay

all fees and costs associated with Plaintiff's related discovery motions, including costs and fees related to the special master, and (3) is required to pay, as prejudgment interest, "[10] percent per year on any damages the jury might award Plaintiff at trial or $5,000[], whichever is greater." The district court reasoned that Defendant's conduct showed at "a minimum a flagrant disregard and gross indifference to its discovery obligations," and its statement that it had produced all documents it had "located," as opposed to possessed, was "inadequate at best and deliberately misleading at worst."

{36}    "We review a trial court's decision to impose discovery sanctions under Rule 1-037(B)(2) [NMRA] for an abuse of discretion." *Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035, ¶ 13, 131 N.M. 317, 35 P.3d 972. Under such a standard, "we will disturb the trial court's ruling only when [its] decision is clearly untenable or contrary to logic and reason." *Id.* (internal quotation marks and citation omitted). Sanctions short of dismissal "may be applied to any failure to comply with discovery orders." *Id.* (emphasis, internal quotation marks, and citation omitted). "[T]he trial court is not required to exhaust less severe sanctions in imposing a just remedy for a violation of discovery rules." *Id.*

{37}    Defendant argues the above sanctions were an abuse of discretion in both their substance and their form. We disagree on both counts. As to the imposition of the sanctions themselves, the district court correctly articulated in its order that it specifically ordered Defendant to produce or identify as privileged all responsive documents in its possession that were created before April 4, 2018. In addressing ongoing concerns regarding whether Defendant was in compliance with this order, the district court further had Defendant certify that it had complied. The subsequent discovery that Defendant had indeed not disclosed such documents supports a finding that Defendants committed a discovery violation. Indeed, Defendant's certification that it disclosed those documents it had "located," as opposed to those it possessed as required by the order, further supports the district court's finding that Defendant's violation showed "flagrant disregard and gross indifference to its discovery obligations." Thus, the imposition of sanctions themselves was not "clearly untenable or contrary to logic and reason" and is not an abuse of discretion. *See id.*

{38}    We similarly conclude that the specific sanction requiring that Defendant pay ten percent per year of the eventual jury award as prejudgment interest was not an abuse of discretion. Defendant essentially argues that such a method of calculating the amount owed for its discovery violation impermissibly invested the jury with the power to determine the amount of the sanction. However, such a calculation was reasonably related to the harm done by Defendant's conduct and constitutes an amount fixed by the district court, albeit as a percentage, and was not determined by the jury. As the district court stated in its order, the primary harm in this case was "delaying the trial and causing Plaintiff and the Special Master to undertake unnecessary work." The district court vacated the original trial date set for this case in part to resolve the discovery issues, and after the district court determined that those discovery issues could have been avoided and trial not vacated, the delay was reasonably accounted for by tying the amount of Defendant's sanction to the duration of the delay. Defendant provides us with

no authority—and we have not discovered any in our research—indicating such a method of calculating sanctions is impermissible. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Thus, the entry of sanctions against Defendant was not an abuse of discretion, and we affirm.

**{39}** Defendant's final arguments on direct appeal regarding denial of its motion for judgment as a matter of law are all reiterative of the arguments set forth above. We, therefore, do not address Defendant's claims regarding denial of this motion.

## II. Plaintiff's Cross-Appeal

**{40}** On cross-appeal, Plaintiff's counsel seek reversal of the district court's order denying their motion for an attorney fee multiplier. Plaintiff's attorneys argue that the high amount of risk they assumed in this case, combined with the "excellent outcome" they obtained, "should have led to the award of a multiplier pursuant to controlling law." *Cf. Atherton v. Gopin*, 2012-NMCA-023, ¶ 7, 272 P.3d 700 (stating that attorney fees "may be increased by a multiplier if the lower court finds that a greater fee is more reasonable after the court considers the risk factor and the results obtained" (internal quotation marks and citation omitted)). Plaintiff's attorneys further point out that Defense counsel has consistently been paid throughout the case whereas Plaintiff's attorneys have "not been paid one dollar to date."

**{41}** We review the grant or denial of a request for a fee multiplier for abuse of discretion. *See Puma v. Wal-Mart Stores East, LP*, 2023-NMCA-005, ¶¶ 56-59, 523 P.3d 589, *cert. granted* (S-1-SC-39540, Jan. 3, 2023). The district court abuses its discretion when its ruling is "against the logic and effect of the facts and circumstances before the court." *Id.* ¶ 59 (internal quotation marks and citation omitted).

**{42}** Here, there are no facts or circumstances in the record that lead us to conclude the district court abused its discretion in denying Plaintiff's motion for a fee multiplier. While we acknowledge that Plaintiff's attorneys assumed a substantial portion of the risk involved in this case by initially filing the action, and thereby inheriting the requisite burden of proof, such alone does not support the notion that a fee multiplier is necessitated by the facts of the case or that the district court abused its discretion in denying Plaintiff's request. Plaintiff points out that the district court itself stated, in ruling on a separate motion, that "this case was hard fought," took a significant amount of time to resolve, and "Plaintiff's lawyers achieved an excellent result for Plaintiff on challenging facts." Nonetheless, such statements, although bearing on the criteria that a court should *consider* when ruling on a motion for a fee multiplier, *see Atherton*, 2012-NMCA-023, ¶ 7, do not obligate a district court to grant such a motion. If such were the case, any claim involving difficult facts and arduous litigation would require, or at least strongly support, granting a request for a fee multiplier. A weighing of such circumstances, and a district court's grant or denial of a fee multiplier based thereon, exists soundly within the discretion of the court, and we will not reverse its decision

unless clearly against the logic and facts of the case. *See Puma*, 2023-NMCA-005, ¶¶ 56-59

**{43}** Plaintiff's counsel rely on several cases to support their argument, but none represent an instance in which a trial court's substantive decision regarding a fee multiplier was reversed. *See id.* ¶ 59 (affirming the district court's application of a fee multiplier); *Atherton*, 2012-NMCA-023, ¶ 9 (concluding that the district court erroneously believed it could not consider the use of a multiplier in that case and remanding for such consideration); *Vinyard v. N.M. Hum. Servs. Dep't*, A-1-CA-36717, mem. op. ¶¶ 29, 38 (N.M. Ct. App. Nov. 12, 2019) (nonprecedential) (affirming the district court's decision regarding a fee multiplier); *Imming v. De La Vega*, A-1-CA-39116, mem. op. ¶ 52 (N.M. Ct. App. Feb. 1, 2023) (nonprecedetial) (same). Here, Plaintiff's counsel point to no facts or circumstances in this case that require us to conclude the district court abused its discretion in denying their motion for a multiplier. Indeed, Plaintiff's attorneys did take on risk in representing Plaintiff, but we see no more inherent risk present in this case than that involved in any case brought to trial. Plaintiff's attorneys earned an award of $800,000 in compensatory damages on behalf of Plaintiff, and the district court further awarded them $351,116.43 in attorney fees. Absent further facts suggesting that a greater fee would be more reasonable based on the risks taken and the results obtained, we cannot say the district court abused its discretion in denying their motion for a fee multiplier.

**CONCLUSION**

**{44}** For the reasons set forth, we affirm.

**{45}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**